STATE OF MISSISSIPPI v. THOMAS N. BUCKINGHAM.

[47 South. 501.]

GAME AND FISH. *Code* 1906, §§ 2304–2336. *Board of supervisors. Right of landowner to hunt on his own land. Beaver Dam Duck Club. Non-residents.*

The board of supervisors has no power, under Code 1906, §§ 2304–2336 (ch. 57), on the subject of game and fish, to prevent members of a club, owning a leasehold interest in the shores and the land under a lake, from shooting game there in season, although they be residents of another state, since Code 1906, § 2336, the last section of the chapter, recognizes the right of landowners to hunt in season on their own land and to permit non-residents to join them in the sport.

FROM the circuit court of Tunica county.

HON. SAMUEL C. COOK, Judge.

Buckingham, the appellee, a non-resident, was indicted and

·tried for unlawfully hunting; wild ducks in Tunica county, contrary to an order of the board of supervisors of the county, .enacted, as was claimed, under authority of Code 1906, ch. 57. From a judgment acquitting defendant, the state appealed to the supreme court.

The opinion of the court sufficiently states the facts.

*R. V. Fletcher,* attorney general, for appellant.

The order of the board of supervisors was enacted under the authority conferred by Code 1906, chap. 57. Code 1906, § 2305, in the code chapter mentioned, gives ·the different ·county boards "full jurisdiction and authority for the protection and preservation of game and fish in their respective counties, and to conserve the same for the use and ·consumption of the inhabitants." The primary purpose is that the inhabitants of the counties of our state shall have the use and benefit of the game and fish belonging therein.

By Code 1906, § 2306, it is provided that the board of sup-·ervisors shall have authority "to regulate the times and the ,places in which and the circumstances under which game and fish may be taken." Still greater powers are implied from the language employed in Code 1906, § 2307, to-wit: "The boards of supervisors may adopt, and from time to time modify ·or repeal such needful regulations not .contrary to law, as they deem necessary or proper for the protection and preservation of the game and fish in their counties," etc. This would imply that the discretion of the board to make such regulations as it sees proper, is very wide indeed. Code 1906, § 2309, distinctly states that: "The boards of supervisors may entirely pro-hibit the taking of any species of game or the catching of fish, for one or more years or seasons when they believe that the species of game is about to be destroyed or become extinct, or that the supply of fish is about to be exausted. This prohibition may be applied to the whole county, or any part thereof, or any water therein." Under this last quoted section it is clear that

the board could have prohibited entirely the killing of game on the meandered lakes, or the board could have singled out Beaver Dam Lake by name and have prohibited the taking of game on this particular body of water. Certainly the power to prohibit implies the power also to restrict or limit.

Code 1906, § 2329, provides that no non-resident shall be permitted to hunt unless he shall first have obtained a license therefor, and Code 1906, § 2335, provides that "this chapter in no way affects the power of the board of supervisors in granting further protection to game."

The whole case for appellee rests upon Code 1906, § 2336, providing that landowners may hunt on their own grounds in seasons not prohibited, and may permit non-resident relatives or friends to hunt with them. Appellee contends that since the members of the Beaver Dam club have leased a ten foot strip along the east bank of the meandered, non-navigable lake, they are entitled, under this code section, to shoot ducks anywhere upon the lake. It is insisted by appellee that the riparian ownership extends to the thread or middle of the stream, and that the club members have the right to shoot ducks on the club's side of the lake since the members are then upon their own grounds. On the other hand, the state contends that Beaver Dam Lake, while not a navigable stream, is yet a body of water of very large extent, and that the game and the fish therein are not the subject of private ownership in the sense that the riparian owner has the absolute right to hunt over these waters, as if he were upon his own lands. In other words, the state contends that the statute, giving the right to hunt on one's own lands, must be limited to "land" in its strictest sense, and that the lessee or even the absolute owner of a ten foot strip of land acquires thereunder no right to shoot over waters which may be contiguous thereto. It must be held that the game on large bodies of water such as Beaver Dam Lake are under the control of the board of supervisors for the benefit of the inhabitants of the county.

It will be noted that no attack has been made by appellee on the statute law bearing on this subject on the ground that it unjustly discriminates against non-residents. The right of the state to impose a license tax upon non-residents, or the right even to prohibit non-residents from hunting altogether, except upon their own land, is not drawn in question. It must be conceded, under the authorities, that such distinctions may be made, always provided, as in the case of our statute, that land owners are permitted to hunt upon their own lands without reference to residence. Nor is it contended that the ordinance under review here is void because of its prohibiting all except residents of Tunica county from hunting on these lakes. That policy accords with the declaration of the purpose of the statute contained in Code 1906, § 2305. Further a statute couched in terms similar to the ordinance here in question has been upheld in Missouri, the right to hunt in any particular county of that state being limited to the citizens of such county. *Ex parte Helton,* 117 Mo. App. 609, 93 S. W. 913; *State v. Kooch,* (Mo. App.) 96 S. W. 721.

The cases of *Morgan v. Reading,* 3 Smed. & M. 366, and *Steamboat Magnolia v. Marshall,* 39 Miss. 110, cited by appellee, are not in point. The court will find that the subject of the state's power, and by delegation the county's power, to control streams of water not wholly enclosed by lands of riparian owners, is discussed in the following cases: *Ex parte Fritz,* 86 Miss. 210, 38 South. 722, 109 Am. St. Rep. 700; *Geer v. Conn.,* 161 U. S. 519, 40 L. Ed. 793; *State v. Theriault,* 43 L. R. A. 290; *Illinois v. Bridges,* 142 Ill. 30, 16 L. R. A. 684; *People v. Collison,* 85 Mich. 105.

It is extremely doubtful whether our statute law contemplates that anyone shall be protected in the right to hunt, except such persons as are *bona fide* owners of the land hunted over. It is not probable that our legislature intended to permit non-residents to have hunting privileges on a body of water of very large extent and thereby avoid the prohibitions of the statute.

Such statutes as are cited hereinabove must be construed strictly in favor of the preservation of game. *Cummings v. Illinois,* 211 Ill. 392.

If it be argued that many of the cases above cited and relied upon are inapplicable to game, and applicable alone to fish on account of their well-known breeding habits, I suggest that ducks are aquatic fowls and just as dependent upon the streams of water as are the fish themselves. Many of the above authorities are at pains to state that there is no distinction between fish and game when it comes to evolving a rule.

*F. A. Montgomery,* for appellee.

Since the year 1882, the Beaver Dam club, composed of eighteen members, non-residents of Mississippi, most of them gentlemen living in Memphis, Tennessee, has leased three acres of ground in Tunica county upon which it has a club house, kitchen, servants' rooms and outhouses, all on the eastern bank of Beaver Dam Lake. In addition to this three-acre tract of land, the club holds a lease upon a ten foot strip of land along the line of the low water mark of the lake. There is no question of the validity of the leases. Appellee is a member of this club, and was a member when indictment was preferred against him for alleged violation of the ordinance of the board of supervisors of Tunica county drawn here in question. It is undisputed that the appellee, as a member of the Beaver Dam club, shot and killed wild ducks of a migratory character, on the waters of Beaver Dam Lake which covered the land embraced in the leases. It was only for the sport of hunting and fishing that the club leased the land along the lake and built their club house and appurtenances thereon.

It must of course be conceded by the learned attorney general that the board of supervisors of Tunica county could not have passed any ordinance, under Code 1906, chap. 57, which would conflict with Code 1906, § 2336,, the last section of that chapter. And, as appellee was indicted for violation of such an

ordinance, he must not in law be guilty of any offense, and the court below so held. Code 1906, § 2336, distinctly sets forth that landowners may hunt upon their own land in seasons not prohibited, and may permit non-resident relatives and friends to hunt with them.

The words "landowners," must here certainly apply to the club, owning a lease of land in the county. It will certainly not be contended that the board of supervisors could have prohibited any man living in Memphis, Tennessee, and owning a plantation in Tunica county, or a tract of wood-land, from hunting and killing game in seasons not prohibited on the land he thus owned in the county. Similarly, this court must hold that the same rule applies in the case of appellee.

The lessee of land is the owner of the land for the term of his lease as fully and completely as the owner of the fee. *Southern Railroad Co. v. Murrill,* 78 Miss. 446, 28 South. 824; *Yazoo, etc., Railroad Co. v. Young,* 28 South. 826.

If a person owns land along the bank of the Mississippi river or along the banks of a meandered lake in our state, he owns also the land under water adjoining, to the center of the stream. *Morgan v. Reading,* 3 Smed. & M. 366; *Steamboat Magnolia v. Marshall,* 39 Miss. 110; *Ex parte Fritz,* 86 Miss. 210, 38 South. 722, 109 Am. St. Rep. 700.

*Greer & Greer,* on the same side.

A leaseholder is a landowner. *Oskaloosa Water Co. v. Board of Equalization,* 84. Iowa, 407, 51 N. W. 18, 15 L. R. A. 114; *White's Lessee v. Sayre,* 2 Ohio, 110.

As to the right of a non-resident to hunt on his own land or fish in waters upon his own property, see *Mallory v. State,* 73 Ark. 312, 83 S. W. 955, 67 L. R. A. 773; *Bingham v. Salem,* 15 Ore. 58; 14 Pac. 523, 3 Am. St. Rep. 152; *Payne v. Sheets,* 75 Vt. 335, 55 Atl. 656.

As to the necessity of an ordinance to be in harmony with the laws of the state, see McQuillan on Municipal Ordinances, §§ 16, 18.

By Code 1906, § 2336, all non-resident landowners may hunt on their own lands within the state, and may invite their relatives and friends to hunt with them. Inasmuch as the order of the board of supervisors of Tunica county forbids the landowner and his relatives and friends to do expressly what the above code section allows them to do, it must follow that the order of the board is invalid.

CALHOON, J., delivered the opinion of the court.

Buckingham was a member of a club of gentlemen who since 1882 constituted what is known as the "Beaver Dam Duck Club," and since that time have had a clubhouse, with its appurtenances, situated on Beaver Dam Lake, in Tunica county, Mississippi. These gentlemen were and are non-residents of the state of Mississippi, and resorted to that lake at the proper season to hunt and fish. The club is not incorporated, but is merely an association of gentlemen organized for the purpose indicated. This lake is not navigable, is a shallow body of water one-half mile wide and three miles long, and its boundaries end in a swamp, without current or outlet, except that from this swamp, two miles south of the lake, there is a flow of water into Beaver Dam Bayou. These eighteen gentlemen, in addition to the three acres which they had leased, have also a lease made by the owners of the riparian land, of ten feet along the line of the low-water mark of this lake, and of such part of the sections along which the lease runs as is submerged by the lake. The board of supervisors passed an ordinance in November, 1907, making it unlawful for any person who is not a bona fide citizen and resident of Tunica county to hunt and kill game of any kind "on or in any of the waters or lakes known as meandered lakes," and providing a penalty for violation. Buckingham shot ducks in that lake on the waters covering what had been leased to him and his associates. The court below found the defendant not guilty, and the state appealed.

The briefs of counsel on either side contain all the authori-

ties that need be referred to on the question involved. It is now settled that the sovereignty is the owner of wild game, on the idea that animals, birds, and fishes, wild by nature, may be preserved as a food supply for all the inhabitants. It is settled that the sovereignty may have close seasons, in which the destruction of all wild fish and game may be actually forbidden, and it may delegate this power to the several boards of supervisors of the various counties. In this state it has done so, and given the various boards of supervisors very large power, as will be seen by reference to chapter 57, Code of 1906. That chapter concludes, however, with the following section:

"2336. *May hunt on own land, etc.*—Landowners may hunt on their own lands in seasons not prohibited, and may permit non-resident relatives or friends to hunt with them."

We have been much interested in the briefs on either side, but think that the particular section referred to covers this case, and that the judgment of the court below was correct.

*Affirmed.*