## J. M. Harper v. Lizzie Ballentine Lamb.

## Elzie Ballentine, et al. v. J. M. Harper, et al.

( Decided April 25, 1924.)

## Appeals from McCracken Circuit Court.

1. Executors and Administrators— Administrator Cannot Pay Debt in Absence of Filing of Claim.—An administrator is not authorized to pay a debt of the decedent without the filing before him of a properly verified claim, in view of Kentucky Statutes, sections 3870, 3871 and 3874.

2. Executors and Administrators—Administrators Held Entitled to Distribute Surplus Though Claim Existed Against the Estate.—An administrator having in his hands surplus personal estate, and being under a positive duty to make a settlement every two years, may, after the expiration of that time, pay out the surplus fund to distributees, even though he knows of the existence of a claim against the estate which has not been presented or filed within that time, in view of Kentucky Statutes, sections 1065, 3858, 3860, 3870, 3871 and 3874.

3. Executors and Administrators—Remedy of Objecting Distributees by Exceptions to Settlement, Appeal or Action to Surcharge.— Where administrator has gone before the county court and made his preliminary settlement and the same is pending in that court, the remedy of a distributee is to appear in that court before there has been a final approval of that settlement and file exceptions, pointing out wherein the same is erroneous, and, if dissatisfied with the action of the court on the exceptions, appeal to the cir-

cuit court, or let the county court proceeding be approved without contesting it in that court, and then bring an equitable action to surcharge the settlement, and point out wherein it is erroneous.

4.    Executors and Administrators—Personal Property Primary Fund Out of Which Debts Should be Paid.—The personal property of a decedent is the primary fund out of which his debts should be paid, and the real property should ordinarily be subjected only where the personal property is exhausted.

NICHOLS & NICHOLS and REED & BURNS for appellants.

NICHOLS & NICHOLS for appellee Harper.

C. C. GRASSHAM and L. B. ALEXANDER for other appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing on each appeal.

R. A. Ballentine died intestate on February 19, 1918, and on February 28, 1918, J. M. Harper qualified as administrator of the estate. Appraisers were appointed who appraised the personal property and set apart to the widow as exempt certain parts thereof.

From such personalty and the collection of debts the administrator realized $2,474.36. The proven claims against the estate and the cost of administration amounted to $596.76, which left in his hands for distribution $1,877.60.

Decedent at his death owed $2,000.00 to a bank, which was secured by a mortgage on certain real estate owned by him. In April, 1918, some of the heirs at law instituted an action for the sale of this real estate and a division among them of the proceeds, and in such action made the lien holder a party. The bank filed its answer and cross-petition asserting its lien thereon, and under a judgment in that action the property was sold for about $3,000.00.

The bank never filed its claim with the administrator, and so far as this record discloses never at any time verified the same as required by law. The administrator was not a party to the suit for a sale of the real estate, nor was he a party to the cross action of the bank.

The administrator retained in his hands the $1,-877.60 for more than two years after his qualification, at which time he paid out to the widow one-half thereof, and to two heirs their portion thereof, leaving in his hands $625.88 coming to the children of a deceased brother

and sister of R. A. Ballentine, whom he had been unable to locate. He retained the latter sum in his hands until the 26th day of November, 1921, at which time he appeared before the county judge and made what appears to be on its face a final settlement of his accounts as administrator. That settlement shows the debits and credits, and also shows that he paid into the hands of the county judge at the time the $625.88 coming to the heirs he had been unable to locate, and that the county judge had made a special deposit of such sum until such heirs could be found, and their identity established.

On the 12th of December, 1921, appellees, the children of a deceased brother of R. A. Ballentine, instituted this equitable action for a settlement of the estate, making defendants the administrator, the other heirs at law, and the master commissioner who had made the sale of the real estate in the suit theretofore instituted for that purpose, and who had in his hands a purchase money bond for $3,000.00, the purchase price of the real estate. They allege there had been no settlement of the estate, nor any suit instituted for that purpose, and that the administrator had or should have in his hands the surplus fund referred to, and that the master commissioner had in his hands the $3,000.00 bond. They asked that the action be referred to a commissioner to settle the estate, and report upon the assets and liabilities.

The defendant, administrator, filed his answer alleging his appointment, the appointment of appraisers, the setting aside by them to the widow certain personal property as exempt, the sale of the personal property and the collection of debts, the payment of all just claims against the estate presented to him, and the cost of administration, and that more than two years after his qualification he paid to the widow one-half of the surplus fund, and to two other heirs their respective portions thereof, and that he had never been able to learn the whereabouts of the other heirs at law, and that he had paid the balance of the surplus fund into the hands of the judge of the county court, when he made his settlement, which sum is still in the hands of the judge of that court, and will be paid to whomsoever the court may direct. He further alleges the bank who held the lien debt against the Ballentine estate, nor any one for it or on its behalf, ever at any time proved or presented in any manner whatever, or requested payment of him as administrator,

or otherwise, of any such claim against said estate, and that he never at any time as such administrator had any right or authority to pay the same, or any part thereof. He states that on November 26, 1921, before the filing of this action he made a full, complete and final settlement of his accounts as administrator with the county court of McCracken county, and files a copy of such settlement so made, and alleges that same was at the time he made it accepted and approved by that court and recorded upon the order book, and he was by proper orders of said court fully and finally discharged as administrator.

In an amended answer he alleges that immediately after his appointment as administrator he advertised in a daily newspaper, published in Paducah, that he was such administrator, and that all persons having claims against the estate should present them properly proven for payment, and that the advertisement was inserted in the manner required by law.

The court sustained a demurrer to this answer as amended, and entered a judgment against the administrator for $1,251.72, after first having given him credit for the $625.88 then in the hands of the county judge. The administrator made his answer a cross-petition against the widow and the two heirs to whom he had paid their respective shares of the surplus fund, and asked in the event a judgment was entered against him for those amounts, that he have a judgment over against such distributees for the same amounts; and the court, after entering the judgment against the administrator, on his cross petition gave him a judgment against such distributees. The first appeal is prosecuted by the administrator, and the second appeal by these distributees.

The only question is whether the answer of the administrator presented a good defense to the action, for clearly if it did no judgment against him should have been entered, and if the judgment against him was wrongfully entered the judgment against the distributees in his favor was also wrongful.

Under the provisions of section 1062, Ky. Stats., the county judge is required to make settlements with personal representatives, and under the provisions of section 1064 he is not allowed to credit a fiduciary in his settlement for any disbursements made without legal evidence to justify the same. Under the provisions of

section 1065 it is made the duty of the county judge to require of such fiduciary a settlement of his accounts once in each two years, unless there is an action pending in the circuit court for such settlement; and any fiduciary failing so to do when notified to settle his accounts is subject to a fine of $10.00 for each day he so fails, after notice.

Under the provisions of section 3860 a personal representative may distribute the estate of a decedent nine months after his qualification, and under this section it has been held a cause of action accrues to a distributee against the administrator, upon his bond, nine months after such qualification. Robinson v. Elam, 90 Ky. 300.

Sections 3870 and 3871 provide that all demands against the estate of a decedent shall be verified by a written affidavit, and prescribing what shall be stated therein; and section 3874 provides:

"No demand against a decedent's estate shall be paid by his personal representative, or allowed as a credit by any commissioner or court, which is not verified by affidavit as required herein."

Section 3858 requires that every personal representative shall have his accounts settled within two years after he qualifies, and as often thereafter as the court may require.

According to the allegations of the answer the administrator retained in his hands for more than two years after his qualification the surplus fund derived from the decedent's personal estate. After the expiration of that time, he having theretofore paid all proper claims filed against the estate and the cost of administration, then paid to such distributees as he could find that portion of such surplus fund severally coming to them. If he had instead of making such distribution, even though he knew of the existence of the bank debt, paid such surplus as a credit on that debt without the bank first filing before him a properly verified claim, he would have been entitled to no credit whatever, for under the provisions of section 3874 no such credit could have been allowed him.

Instead therefore of making such application of the surplus fund, he waited until the expiration of two years and more, during a large part of which time he was liable to a suit by any or all of the distributees on his bond; and there being a positive provision of law requiring him

to make a settlement within two years after his quali-
fication, clearly he had the right after the expiration of
that time to pay to the distributees their several parts
of that surplus fund.

His answer shows that he was not derelict in any
duty he owed as administrator. He collected the debts
owing the estate, he sold the personal property of the
estate and converted it into money, he advertised for
claims against the estate and paid out of such fund every
claim presented. Even if he had knowledge of the ex-
istence of the bank debt, which was secured by mortgage,
there was never a time that he could have applied the
surplus fund to the extinguishment of that debt, and been
allowed credit for the same, for it stands admitted that
claim was never presented to him as administrator in
any form whatever.

So the question arises, may an administrator, having
in his hands surplus personal estate belonging to the de-
cedent upon whom there rests a positive duty to make a
settlement every two years, after the expiration of that
time pay out the surplus fund to distributees rather than
be subject to suits by them, or shall he, even if he knows
of the existence of a claim against the estate which has
not been filed within that time, decline on that account
to distribute the same?

We are of opinion that he not only had the right,
but that it was his duty under the law at that time to
pay out the surplus fund to the distributees in order to
protect the estate and himself from costs and litigation
that might accrue by reason of such failure.

But it is said that the allegations of the answer itself
show that there had been no final settlement by the ad-
ministrator in the county court, and that it is only a final
settlement which has been approved by the court after
it has laid over one term for exceptions, which is *prima
facie* evidence of its correctness. That is true, but the
fact remains that the county court is the proper forum
in which a personal representative may settle his ac-
counts, and the answer discloses that on the 26th of No-
vember, 1921, some sixteen days or more before the filing
of this action, the administrator went before that forum
and made his preliminary settlement, and the same was
then pending in that court. That being true the remedy
of the distributees was to appear in that court before
there had been a final approval of that preliminary set-

tlement and file their exceptions, pointing out wherein the same was erroneous, and if dissatisfied with the action of the court on the exceptions, to appeal to the circuit court, or, if they preferred, to let the county court proceeding be approved without contesting it in that court, and then bring their equitable action to surcharge the settlement, and point out wherein it was erroneous. Bell v. Henshaw, 91 Ky. 430; Turley v. Barnes, 103 Ky. 127.

Undeniably the personal property of a decedent is the primary fund out of which his debts should be paid, and the real property should ordinarily be subjected only when the personal property is exhausted; but in this case the debtor having a lien upon the real estate did not present to the administrator his claim properly verified or otherwise, and the latter being required by law to make a settlement at the expiration of two years was then authorized to pay out the surplus fund to the distributees, because the lien holder had never filed any claim against the estate.

We are of opinion that the answer presented a good defense to the action, and the court therefore erred in sustaining the demurrer.

It also follows that the judgment in favor of the administrator against the distributees, to whom he had theretofore paid their portions, was also erroneous.

For the reasons given each judgment is reversed with directions to overrule the demurrer to the answer as amended.