RAY *et al. v.* STATE.

(Division B. March 9, 1931.)

[132 So. 753. No. 29310.]

**W. A. Blair,** of Tupelo, and **A. T. Cleveland,** of Fulton, for appellants.

**Eugene B. Ethridge,** Assistant Attorney-General, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellants were prosecuted for unlawful seining. The affidavit was made out before a justice of the peace of district 5 in Itawamba county, and the affidavit charged that "Henry Ray, E. L. Sappington, Wiley Ray, Hugh Nichols and E. L. Kennedy, on or about the 10th day of July, 1929, in the county aforesaid in said Justice District did wilfully and unlawfully take or kill game fish not with hook and line or dip nets and not from private ponds or from barrow pits, or overflow ponds which go dry in summer when cut off from the regular stream said fish being taken with seine from a running body of water, to-wit: the 'Fish Lake' which does not go dry in summer, same being in Tombigbee River Bottom against the peace and dignity of the state of Mississippi."

It appears that appellants, on or about the day mentioned in the affidavit, went to a body of water in the Tombigbee river bottom, which body of water was fed from the overflow of a creek which ran into the Tombigbee river, and that during a good part of the year the water was running water and that some of the water constituted lakes that did not go dry in the summer. The proof shows that the appellants went into some of the water, and that it was too deep to seine successfully, and they did not catch anything in this deep water. They

went to another lake or place of the slough, it not being then a running body of water, and went into a prong which was separated from the other lake and which, according to the proof of the defendants, would go dry in the summer, and seined therein and caught some fish. These witnesses for the defendants testified that they went to the lake about the time the court convened, and the place where the lake or body of water in which they did the seining and caught the fish had been, was entirely dry, and that it frequently went dry in the dry season of the year. This body of water where the seining was done had banks, and at some parts of the year was connected with the other body of water and slough, and during some seasons of the year constituted a running stream.

The proof for the state tended to show that the lake never went dry, and that it was a part of the chain of lakes or waters which at some time of the year constituted a running stream, and at other times there was land between the two bodies of water which was dry, but the lake in which the seining itself was done never went entirely dry.

The court granted the state two instructions reading as follows: "The court charges the jury for the state that if the jury believes from all the evidence in the case, beyond all reasonable doubt, that the waters seined by the defendants were a part of the system of lakes, connected by a well defined channel through which the water flowed from one lake to the other below it during the greater part of the year, then same would not be an overflow pond and it would be against the law to seine same at any time and take game fish thereby and the only way that same would be permitted by law to be seined, would be with a seine of two inches or more mesh and then no game fish could thus be legally taken." And: "The court charges the jury for the state that if they believe from the evidence in the case, beyond a reasonable doubt, that the defendant seined for and thereby caught and took

game fish at the time and place and in the manner and form as charged in the affidavit, then you would find the defendants guilty as charged and that is no defense under the law, that the lake seined goes dry in some places during the summer, but in order to be a defense, the entire lake would have to usually go dry in the summer.''

It refused all the instructions requested by the defendants; the requested and refused instructions reading as follows: ''The court charges the jury if the place where the defendants took fish was fed from the overflow of the creek or river and frequently during the summer was dry or practically dry, the lake or pond in question was an overflow pond and defendants taking fish therefrom was not in violation of the law and unless the state proves beyond a reasonable doubt that the place where the defendants took the fish was a place that did not go dry you will return a verdict of not guilty.'' And: ''The court charges the jury that if the place where the defendants took fish was fed entirely from overflow of the river or creek and became dry in summer, defendants cannot be convicted and you will return a verdict of not guilty.'' And: ''The court charges the jury for the defendant that if the pond where the defendants took fish was at the time that they took the fish cut off from a running stream, you will return a verdict of not guilty.'' And: ''The court charges the jury for the defendants that the defendants say that the place where they took the fish was from an overflow pond, which at the time was cut off from the main or regular stream, and unless the state proves beyond all reasonable doubt and to a moral certainty that the place where the defendants took the fish was not such a place you will find the defendants not guilty.''

We think the question ought to have been submitted to the jury on appropriate instructions. The instructions given the state were erroneous. Hathorn v. State, 151 Miss. 778, 119 So. 303. In that case the Chief Justice, speaking for the court, said: ''This is an appeal from a

conviction for unlawfully taking game fish out of a pond or lake with a seine in violation of subsection (b) of section 9, chapter 178, Laws of 1926, which provides: 'It shall be unlawful to take or kill game fish in any way except by hook and line or dip nets, except in private ponds or in barrow pits, or overflow ponds which go dry in summer, when same is cut off from the regular stream.' The evidence discloses, without real conflict, that the pond or lake from which the fish were taken is about one-half or three-quarters of a mile long, and is parallel with, and only a short distance from, a large creek; that it connects with said creek at each end, and is fed entirely by overflow from the creek at its upper connection therewith. When the water in the creek is low, it ceases to flow into the lake or pond, and frequently during the summer the lake is practically dry, with the exception of one or two holes, across which a man can step, and at times is wholly dry. On this evidence, the lake or pond in question must be characterized as an overflow pond which goes dry in the summer when cut off from the regular stream.''

If the defendants' evidence be true, the lake which was seined and in which the fish were caught is an overflow pond, which goes dry annually, and within the meaning of the statute. The first and second instructions for the defendants should have been given. The other instructions requested by the defendants are not entirely accurate. The law does not authorize the seining of lakes which constitute a part of a water course and which run during a portion of the year, unless these ponds usually go dry in dry seasons of the year. The public are entitled to have the game fish protected where they move from place to place during the season when the stream is a running stream, although the fish may be confined at a particular lake during a portion of the year, and subject to be taken by the owner of the lake for his own use or to be taken by hook and line during the season that it is

cut off. The public have an interest in preserving the game for food supply where, during a portion of the year, they may migrate from place to place, but, where an overflow lake or pond usually goes dry, the fish will be lost to the public and be destroyed by animals and birds of prey when the lake goes dry.

For the errors indicated, the judgment will be reversed, and the cause remanded for a new trial.

Reversed and remanded.