## Draffen et al. v. Black.

June 21, 1946.

Rehearing denied October 8, 1946.

Hazelrigg & Cox for appellants.

Frank M. Dailey for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellee, Charles W. Black, is the owner of a tract of land in Franklin County, within which is located a large fishing pond. The pond is entirely on Mr. Black's property, and has no inlet, outlet, or connection with any public waters. The owner permits the general public to fish in the pond, upon the payment to him of a stipulated

fee. One of the conservation officers employed by the Fish and Game Commission entered upon the property of Mr. Black to determine whether persons fishing in the pond had procured a State fishing license, and whether the fish withdrawn from the pond conformed to the statutory restrictions as to size and number. Appellee protested this action upon the ground that the fish in the pond were owned and possessed by him and neither the public nor the State had any interest therein, wherefore persons fishing in the pond were not required to obtain a license for the privilege, and the statutory restrictions as to number and size were not applicable to the fish withdrawn therefrom. Appellee likewise challenged the right of State conservation officers to enter upon his land for any purpose, without his permission.

As a result of this controversy, appellants instituted this action under Sections 639a—1 to 639a—12, inclusive, of the Civil Code of Practice, seeking a declaration of the rights of the parties in respect to the matters hereinbefore set out. The Chancellor decreed that a State fishing license is not required of any person fishing in a private pond which has no inlet, outlet, or connection with a public stream; and that the provisions of KRS 150.470, imposing a limit on the number and size of fish withdrawn from water, or in possession, have no application to fish taken from such a private pond. He additionally declared:

"That although conservation officers of the Game and Fish Commission have the right to go upon the property of others in the performance of their official duties, and in doing so are not trespassers, yet by virtue of the Court's ruling * * *, such conservation officers have no right to go upon the defendant's property for the purpose of checking a fishing license of a person fishing in his pond, nor to check the number and size of fish taken from said pond, as such action would be outside of their authority."

KRS 150.470 provides:

"(1) No person shall take or have in his possession more than ten black bass, ten trout, fifteen rock bass or goggle-eye, fifteen crappie, fifteen jack salmon or wall-eyed pike, fifteen sand pike or sauger, or fifteen striped bass in any one day, except that any person hav-

ing fished two or more days in succession may have in possession a total of not more than twice the number allowed for one day.

"(2) No person shall take or have in his possession any black bass under eleven inches in length, nor any crappie under eight inches in length, nor any channel or fiddler cat under ten inches in length, nor any jack salmon or walleyed pike, sand pike or sauger under thirteen inches in length."

KRS 150.170 prohibits any person between the ages of sixteen and sixty-five years from angling in any stream or body of water, whether public or private, without first procuring a fishing license. Appellee argues that KRS 150.470 has no application to fish in private ponds, because such fish are the sole property of the owner of the land on which the pond lies, and the fish, having no means of escape, are to be considered reduced to the possession of the landowner. He then argues that the State cannot regulate the size and number of the fish, or require the angler to procure a license. It is conceded that the Statute has no application to the owner of the land, his resident children, or lessees of the land on which the pond is located.

KRS 150.470 makes no distinction between fish taken from public and those taken from private waters. One violates that Section of the Statutes who takes, or has in his possession, fish under in size or excessive in number. The general scheme of fish and game laws is to preserve from extinction useful fish in the waters of the Commonwealth. Such protection has always been held to be for the welfare of the public, and reasonable regulations in respect to fish and game have been held to be constitutional. At once it is apparent that the Fish and Game Commission would be helpless in its endeavor to prohibit the taking of excessive numbers or undersized fish from public streams, if one could retain in his possession all fish taken from private ponds, irrespective of their size and number; because, in penal actions to enforce the game laws, the Commonwealth would be required to prove the contraband in possession of an angler was taken from a public stream, and not from private waters. The Legislature made no exception, and the courts may not, especially when to do so virtually would destroy the force of the Act. The Legislature has not attempted to

interfere with appellee in the exercise of his individual rights in respect to the fish in his pond. It has attempted to regulate only the public invited to fish in the pond. If, to enforce the law in respect to public property, it becomes necessary to regulate private property, such may be done by the State in the exercise of its police power; for it has been said the police power is "coextensive with the necessities of the case and the safeguards of public interest." 11 Am. Jur., Constitutional Law, Sec. 251, page 978. In Nicoulin v. O'Brien, 172 Ky. 473, 189 S. W. 724, 732, the Court said:

"* * * by reason of the state's control over fish and game within its limits, it is within the police power of its Legislature, subject to constitutional restrictions, to enact such general or special laws as may be reasonably necessary for the protection and regulation of the public's right in its fish and game, even to the extent of restricting the use of, or right of property in, the game after it has been taken or killed."

In Commonwealth v. Chase-Davidson Co., 109 Ky. 236, 58 S. W. 609, the Court held that the State, in the exercise of its police power, has the right to prohibit the possession of certain types of game irrespective of when, or under what circumstances, the game was acquired. In that case, the defendant had killed large numbers of quail in open season, but retained them in its possession and offered them for sale in closed season. In Commonwealth v. Phoenix Hotel Co., 157 Ky. 180, 162 S. W. 823, the Hotel defended upon the ground that the quail had been bought in Illinois and shipped to Kentucky. The Court held that it made no difference where they were killed or how they were acquired; the offering of quail for sale in closed season was a violation of the Statutes.

These cases seem to be controlling here. KRS 150.470 makes no distinction in respect to the source of supply or how the fish may be acquired; it is a violation of the Statute to take or have in possession fish in excessive numbers or undersize. The following cases from foreign jurisdictions relied upon by appellee are not precisely in point: Newman v. Ardmore Rod & Gun Club, 190 Okl. 470, 125 P. 2d 191; Arkansas Game & Fish Commission v. Storthz, 181 Ark. 1089, 29 S. W. 2d 294; State v. Lipinske, 212 Wis. 421, 249 N. W. 289.

The question in each of those cases was confined to the right of the owner of a private pond to take fish therefrom for his personal use. As we have observed, our Statute seems to exempt the owner himself, his resident children, and his lessees from the provisions of the Act. We therefore conclude the Legislature has the right, which it has exercised, to restrict the number and size of fish taken by the public from private ponds as well as public streams and to require anglers to procure State fishing licenses as a prerequisite to their right to fish in private ponds. It follows that the game conservators have the right to enter private property to enforce the provisions of the Statute.

The judgment is reversed, with directions that it be set aside and another be entered in conformity with this opinion.