17135

ESTHER G. DARGAN, Respondent, v. A. A. RICHARDSON, as Chief Game Warden for the State of South Carolina, and TOM M. CANNON, SR., CHARLES McNEILL and H. E. GRAINGER, as County Game Wardens for Horry County, Appellants.

(92 S. E. (2d) 167)

136

Messrs. *T. C. Callison, Attorney General, James S. Verner, Assistant Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, and *J. Reuben Long, Solicitor,* of Conway, *for Appellant,*

Messrs. *Ralph Hoffman* and *Lonnie D. Causey,* of Conway, *for Respondent,*

March 26, 1956.

TAYLOR, Justice.

The question in this appeal is whether or not persons who pay for the privilege may fish in private ponds of

this State with artificial fishing tackle without complying with the provisions of Sections 28-551 and 28-554 of the Code of Laws of South Carolina 1952, relating to the procurement of fishing licenses by such persons.

Plaintiff is the owner of certain lands in Horry County whereupon she has excavated and created certain fish ponds which are supplied by water both from natural sources and through pumping from the intracoastal waterway in such a way that they are entirely segregated from other waters. These ponds have been stocked with fish and persons desiring to fish therein are permitted to do so upon the payment of a fee to Respondent.

Appellants caused to be arrested certain of Respondent's patrons, both residents and nonresidents of this State, who were charged with violation of Sections 28-551 and 28-554, Code of Laws of South Carolina 1952, which relates to persons fishing with artificial tackle in the fresh waters of this State. A temporary restraining Order was issued by the Judge of the Civil Court of Horry County, restraining Appellants from interfering with Plaintiff's patrons. After taking testimony and hearing arguments this Order was made permanent on May 2, 1955.

The pertinent portions of the statutes under consideration read as follows:

Section 28-551: "* * * it shall be unlawful for any person to fish in fresh water of this State by use of * * * manufactured tackle * * * unless he has at first obtained an angler's license. * * *"

Section 28-554: "All nonresidents of this State before fishing for game fish or other fish in any manner in the inland streams or waters of this State, shall first procure a nonresident fishing license, * * *."

Since the adoption of the 1952 Code, these sections have been re-enacted and included as Sections 16 and 17 of Act No. 898 of the 1952 Session of the General Assembly, 47 Stat. at Large, p. 2179, approved April 24, 1952; and ref-

erence to the various sections thereof is enlightening in that they provide as follows:

Section 16: All persons fishing in fresh waters of this State, with manufactured tackle, must have a license.

Section 17: All nonresidents fishing in this State must have a license.

Section 21 (e) : Any person convicted of violating enumerated crimes relative to fish and game shall be prohibited from hunting or fishing within the State of South Carolina.

Section 23: The owners of private ponds may catch fish therein, with traps or nets for propagation purposes only by permission from the director.

Section 24: Such owners may not draw the waters from such private ponds or dispose of the fish caught unless under the supervision of the Division of Game.

Section 35: Except landowners and members of his family, hunting or fishing on their own lands or in waters on their lands leased by them * * * provided any employee residing in this State may fish or hunt on the lands of his employer owning or leasing the land * * * provided, further, that the provisions of this section shall not prevent residents of the State from hunting without a license on their own lands in any county of the State.

Section 47: No person may engage in the business of raising pheasants on his own land without a license.

Section 51: Steel traps may not be set except under certain conditions even on one's own land.

Section 63: No person may engage in the business of raising, breeding and selling quail, Hungarian or gray leg partridge, or other game bird without a license.

Section 65: Poison may not be put out to control predatory animals even on one's own land without a permit.

Act 171, April 17, 1953, 48 Stat. at Large, p. 217, 1953 Acts and Joint Resolutions, South Carolina, with reference

to licensing provisions applicable to Lakes Marion and Moultrie and connected waters, provides:

" 'The holder of this temporary license shall also be authorized to fish in any private pond in Clarendon County during the time authorized above, provided the holder has the pond owner's permission.' "

Other references throughout the Act are to "clear water streams"; "fresh water streams"; "rivers, lakes and streams"; "artificial lakes"; "private ponds"; and "public streams." Respondent takes the position that the lake in question is not encompassed with any of the foregoing; that had the Legislature so intended it would have used the words "ponds and lakes entirely segregated from other waters," or words of similar import as used in Title 28-3, Code of Laws of South Carolina, 1952, and Act 898, Section 1, 1952 Acts and Joint Resolutions, South Carolina, wherein it is declared that all wild birds, wild game and fish (except fish in strictly private ponds and lakes entirely segregated from other waters) are hereby declared to be the property of the State. It will be noted, however, that this Section relates to the ownership or title thereof and not the licensing or regulating of such. The words "entirely segregated from other waters" are conspicuous for their absence in the licensing features of the Acts heretofore referred to which indicates that the Legislature was of the mind and purpose that such should not be excluded but that at the time it re-enacted the angler's and nonresident's license provisions, intended to maintain and exercise regulatory powers over the "fresh water of this State," and the "inland streams or waters of this State" whether entirely segregated from other waters or not.

While the private right or ownership may rest in Respondent. Act 898, Section 1, 1952 Acts and Joint Resolutions, South Carolina, *Rice Hope Plantation v. South Carolina Public Service Authority*, 216 S. C. 500, 59 S. E. (2d) 132, such property right or ownership is not such as to be beyond reasonable regulations by the State. *Terri-*

*tory of Hawaii v. Hoy Chong,* 21 Haw. 39, Ann. Cas. 1915A, 1155, 22 Am. Jur., Fish and Fisheries, Section 48, Page 702, and 36 C. J. S., Fish, § 29, p. 863, note 54. The Legislative body recognized a distinction, however, in the rights of the owners and other parties and made the landowner, his family, and his employees exceptions to the licensing features; and those charged, in the instant case, with violating the provisions of the Act do not come within these exemptions. This principle was also touched upon in *State v. Taylor,* 358 Mo. 279, 214 S. W. (2d) 34, 37, in the following language:

"It is unnecessary to define the special rights of the owner of the pond for the appellant is not such owner."

In *Commonwealth v. Gilbert,* 160 Mass. 157, 35 N. E. 454, 455, 22 L. R. A. 439, defendant was convicted of selling trout which had been raised in a private pond. A statute provided that such fish was the property of the owner of the pond, but prohibited the sale of such by him during the close season. This statute was held to be constitutional against the contention that it deprived him of his property without due process of law. The Court, using the following language, stated:

" * * * Such laws are not to be held unreasonable because owners of property may thereby to some extent be restricted in its use. It has often been declared that all property is acquired and held under the tacit condition that it shall not be so used as to destroy or greatly impair the public rights and interests of the community. * * * The legislature may forbid the catching or selling of useful fishes during reasonable close seasons * * * and to extend the prohibition so as to include such as have been artificially propagated or maintained is not different in principle from legislation forbidding persons from catching fish in streams running through their own lands."

In the State of Georgia, private ponds are exempt by statute, the act stating in part " 'nothing herein contained shall

\* \* \* give to said Commission power and authority over strictly private ponds' " Laws Ga. 1943, p. 128, § 17. However, upon construing a statute requiring license for fishing in "any of the waters of this State", the Supreme Court of Georgia in *Vickers v. Jones,* 200 Ga. 338, 37 S. E. (2d) 205, 210, in passing upon the question of whether or not residents of that State who fish in a private pond may do so without license if the owner is under express exemption, stated:

"Accordingly, while the owner of a private pond may fish therein without himself procuring a license, and may take fish therefrom in any manner whatever, other residents of this State \* \* \* even though fishing in such private pond as invitees of the owner, would be required to obtain a license \* \* \*."

We are of the opinion that Sections 28-551 and 28-554, Code of Laws of South Carolina, 1952, and the corresponding Sections of Act 898, 1952 Acts and Joint Resolutions, South Carolina, apply to all persons fishing in ponds or lakes "entirely segregated from other waters" in the same manner as those fishing in "fresh water of this State" or "the inland streams or waters of this State"; that the power of the State to impose reasonable regulations concerning such is not synonymous with and limited to ownership and that the foregoing are not in violation of Section 5, Article 1, of the Constitution of South Carolina.

The Order appealed from should be reversed and set aside, and it is so ordered. Reversed.

STUKES, C. J., OXNER and LEGGE, JJ., and T. B. GRENEKER. A. A. J., concur.