STATE *v.* HEARD

No. 42547          April 1, 1963          151 So. 2d 417

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

*William Joel Blass,* Wiggins, for appellee.

ETHRIDGE, J.

The question is whether a nonresident of Mississippi, who pays the owner for the privilege, may fish in a privately owned, land-locked lake in this state without first obtaining the fishing license required of nonresi-

dents by Mississippi Code 1942, Rec., section 5904. Miss. Laws 1956, ch. 151.

(Hn 1) Zack T. Heard, a resident of New Orleans, Louisiana, was convicted in a Justice of Peace Court of fishing without a fishing license. He appealed to the Circuit Court of Stone County, which considered the case on a stipulation of facts and without a jury. That court, holding defendant was not required to have a license, found him not guilty. From that judgment, the state has appealed on the question of law decided adversely to it. This may be done under Code section 1153, under which this court may decide the question of law presented, but cannot change the judgment of acquittal.

Red Gap Lake, in Stone County, has an area of 120 acres. It is entirely land-locked, and is located on lands belonging to James N. Harsh, who constructed it in 1951. He erected a dam across the southeast end between two hills, where previously there was only dry land. No stream runs into the lake, and its waters are composed entirely of those falling on surrounding lands, also owned by Harsh. He stocked the lake with fish, and has fertilized and maintained it at his expense. The only outlet is a spillway on one end of the dam, approximately four feet high, which makes the lake inaccessible to any fish outside of the lake. The spillway overflows during unusually heavy rains, three or four times annually, and it would be possible for some fish to escape from the lake over the spillway, but it is not possible for fish to enter the lake.

Fish escaping over the spillway would enter a small branch traversing three-quarters of a mile on Harsh's land before entering a small stream known as Little Biloxi. All fish in the lake have been raised from stock placed there by Harsh, although the sources from which Harsh obtained the fish were not shown. The public can not enter the lake without trespassing upon his

land, except by his invitation. For several years Harsh has sold fishing rights to individuals coming on his land at his invitation, charging $1 per person, and making additional charges for boats, bait and tackle. The annual cost to Harsh of maintaining the lake is approximately $5,000. Since it was constructed, no fish have been taken from it of a species different from those placed in it by him.

On Saturday afternoon, July 7, 1962 Heard, from New Orleans, was fishing in the lake without a license, when the sheriff arrested him on the charge of fishing without a license in violation of the statute. Heard was using both natural and artificial bait, and had paid Harsh $1 for the privilege.

## I.

The applicable statute is Mississippi Code 1942, Rec., section 5904:

"A non-resident fishing license shall be required of all persons who are non-residents of the State of Mississippi within the meaning of this act and for such license there shall be paid a fee of six dollars ($6.00) with an additional fee of twenty-five cents (25¢) to the officer issuing same; provided, however, no fishing license shall be required of any non-resident minor under fourteen years of age." Miss. Laws 1956, ch. 151.

Code section 5876 provides that "no license shall be required of persons to . . . fish . . . on lands in which the record title is vested in such person." This exemption from license would apply to Harsh, the owner of the lake, but not to Heard.

Code section 5906, as amended by Mississippi Laws 1958, ch. 175, pertains to fishing licenses for residents of this state. It is not pertinent in this case. Code section 5857 makes any violation or attempt to violate any of the provisions of the game and fish laws a misdemeanor.

Section 5904 requires a fishing license of all persons who are nonresidents of the State of Mississippi. See sec. 5870, as amended by Miss. Laws 1962, ch. 189 (defining nonresidents). The only exemptions from the act are minors under fourteen years of age, and persons owning the record title to the property. Heard does not fall within either of these categories. Section 5904 is not ambiguous. It requires fishing licenses of "all persons who are nonresidents of the state of Mississippi," except the two types of persons exempted. The legislative intent must control. There are no other exceptions from the statute, nor is there any terminology which would warrant considering any other exceptions.

(Hn 2) Appellee argues that one fishing on a privately-owned lake, with the consent of the owner, is exempted from section 5904. The statute does not indicate such an exemption, and the court cannot amend it by judicial construction.

Prior to 1932 the legislature vested county boards of supervisors with licensing and supervisory powers for fishing and hunting in counties. Miss. Code 1930, secs. 4759, 4761, 4762. In 1932 the state took over these functions, and created the State Game and Fish Commission. Miss. Laws 1932, ch. 123. Subsequent legislation on the conservation of wildlife in this state has increased the powers and duties of the Commission, and manifests a legislative intent to regulate and protect the fish and game of this commonwealth in the public interest. Section 5904 is a particular, unambiguous expression of that intent, concerning the requirement of fishing licenses from nonresidents of the state. No exemption is made for those fishing in privately owned, land-locked lakes, other than as to owners, and defined minors.

The legislature has evidenced the same intent to require licenses for privately owned and operated shooting preserves. Chapter 182, Mississippi Laws 1962, is

a detailed statutory regulation of privately owned shooting preserves. Section 11 requires state hunting licenses of all persons hunting on shooting preserves. It indicates further a legislative determination that its licensing power should apply equally to those hunting and fishing on privately as well as publicly owned lands.

Code section 5900 makes it unlawful to take game fish in any manner other than by hook and line, or dip-net, provided that "in private ponds . . . which go dry in summer and cut off from the regular streams, dip-nets may be used . . ." Section 5903 makes it unlawful to sell any game fish, but the commission "may issue a permit to the owner of a private pond to sell fish grown or cultivated by such owner under such regulation as the commission may deem wise." In both instances the statutes regulate certain types of operations in privately owned ponds.

(Hn 3) Appellee argues that an exemption from commission regulation of stream and water pollution of privately owned lakes is applicable also to the licensing statute, section 5904. The Stream and Water Pollution Act was first passed by Mississippi Laws 1942, chapter 252. It was repealed, and a new, broader statute went into effect in chapter 381, Mississippi Laws 1946. Miss. Code 1942, Rec., secs. 5929-01 to 5929-17. That act, in section 11, provides, "Nothing contained in this act shall be construed" or have the effect of giving the commission jurisdiction of wholly land-locked and privately owned lakes. The exemption is from commission jurisdiction over stream and water pollution of the named types of waters. This is particular legislation on water pollution, and has no reference to other licensing powers of the commission, or to section 5904.

The present issue is concerned with the application of a specific, unambiguous licensing statute. It does not regulate the owner of the property. It simply requires that all other persons who are nonresidents must

have a fishing license before they may fish in this state. Harsh, the owner of the lake, may continue to operate his business as before, but section 5904 requires that nonresidents who fish in it must have licenses.

## II.

(Hn 4) Appellee's argument for an exemption as to his type of lake has no basis in the terms of the statute. Nor is there any reason for implying one. An exception cannot be created by construction, when none is necessary to effectuate the legislative intention. (Hn 5) Ordinarily, an exception must appear plainly from the express words or necessary intendment of the statute. Where no exception in positive words is made, the presumption is the legislature intended to make none. (Hn 6) In effect, we are asked to create an exception to the statute, which we decline to do. 50 Am. Jur., Statutes, sec. 432. Moreover, although criminal and other penal statutes are generally said to be strictly construed in favor of the defendant, the courts are not authorized to interpret them so as to emasculate their effect. (Hn 7) Where the legislative language is plain and unambiguous, and conveys a clear and definite meaning, as we think section 5904 does, there is no occasion for resorting to rules of statutory interpretation. 50 Am. Jur., Statutes, sec. 410.

Cases from several other jurisdictions apparently reach a contrary conclusion by implying an exemption to the licensing statute, of persons fishing on privately owned, land-locked lakes. See Anno., 15 A.L.R. 754 (1951); Water Service Co. v. Ressler, 173 Ohio St. 33, 180 N.E. 2d 2 (1962). We do not think their rationale is consistent with the terms of the Mississippi statute and the judicial interpretation of enacted legislation. To imply the exemption asserted by appellee, without statutory indication of that intent, would be inconsistent with the judicial function in applying a statute.

The Mississippi cases do not indicate a contrary result. Ex parte Fritz, 86 Miss. 210, 38 So. 722 (1905), was a habeas corpus proceeding by Fritz to obtain his release from custody on a charge of unlawfully taking fish, in violation of an ordinance of the county board of supervisors prohibiting the use of a seine more than seventy-five feet in length. Fritz was seining in Horn Lake, a large body of water partly in Tennessee and partly in this state, with outlets into the Mississippi River. He owned a considerable amount of the shoreline, but not all of it.

The court said that Fritz did not own the fish in the lake, even if he owned its bed; that fish are ferae naturae in all running streams and lakes with outlets into other waters, and the state has the power to regulate the time, manner, and extent of the taking of the fish, whose ownership is in the public; and doing so, the state acts in its sovereign capacity for the benefit of all its people. After outlining these general principles, it was held that Fritz was improperly convicted, because the offense was committed outside the territorial limits of the justice of the peace court which convicted him. Hence the conviction was reversed and defendant discharged. The state's power to regulate was upheld. The conviction was invalid because Fritz was convicted in the wrong court.

State Game and Fish Commission v. Louis Fritz Co., 187 Miss. 539, 193 So. 9 (1940), involved the power of the commission to contract with Carrigan to clear Horn Lake of turtle, gar, and other predatory species, and to permit Carrigan to sell the gross fish. Fritz, owner of a large amount of the riparian lands, was granted a permanent injunction against Carrigan, punitive damages and attorney's fees. Carrigan did not appeal. The chancery court also decreed a judgment for damages against members of the commission. They appealed, and that part of the decree was reversed. It was also held that the statutes did not confer upon the commission

authority to remove gross non-game fish from lakes and streams. There was no difference of opinion among the judges as to the power of the legislature to regulate and order removal of predatory fish, but only over what the statutes actually provided.

Other cases from this jurisdiction have recognized the power of the state to legislate on licensing and conservation of wildlife, but they pertained to the particular statutes there involved: State of Miss. v. Buckingham, 93 Miss. 846, 47 So. 501 (1908); State v. Hill, 98 Miss. 142, 53 So. 411 (1910); Hathorn v. State, 151 Miss. 778, 119 So. 303 (1928); Ray v. State, 159 Miss. 887, 132 So. 755 (1931); Schmittler v. Sunflower County, 156 Miss. 227, 125 So. 534, (1930).

## III.

(Hn 8) Reasonable regulatory measures enacted to conserve the fishing resources of the state must come within constitutional limitations, but generally the courts will not apply a narrow construction to constitutional provisions in determining the validity of fish conservation laws. 36A C.J.S., Fish, sec. 27. Accordingly, depending on the terms of the statute, a license may or may not be required to engage in fishing in private waters. (Hn 9) A person is not deprived of his property without due process of law, because a license is required of others than the owner to fish in a private pond. 36A C.J.S., Fish, sec. 36, p. 558. (Hn 10) We cannot say that section 5904 is an unreasonable regulation, for the protection of the public interest in the fish of the state. (Hn 11) In legislating on this subject, the legislature is not confined necessarily to the common law criteria of whether the lake involved is connected, either continuously or at intervals, with other bodies of water, so as to permit fish to move to and from them. See Anno., 15 A.L.R. 2d 754 (1959).

Draffen v. Black, 302 Ky. 775, 196 S.W. 2d 362 (1946), dealt with a statute substantially similar to section 5904. The Kentucky act prohibited any person within named ages from "angling in any stream or body of water, whether public or private, without first procuring a fishing license." Black had a pond on lands entirely owned by him, and it had no connection with any other waters. He permitted the general public to fish in it, upon payment to him of a fee. He sought a declaratory judgment against the conservation officers, which would adjudicate that persons fishing in the pond did not need a state fishing license. The court held to the contrary. The Kentucky statute made no distinction in respect to the source of supply or how the fish may be acquired. It exempted only the owner. The court correctly analyzed the pertinent considerations in this way:

"KRS 150.470 makes no distinction between fish taken from public and those taken from private waters. One violates that Section of the Statutes who takes, or has in his possession, fish under in size or excessive in number. The general scheme of fish and game laws is to preserve from extinction useful fish in the waters of the Commonwealth. Such protection has always been held to be for the welfare of the public, and reasonable regulations in respect to fish and game have been held to be constitutional. At once it is apparent that the Fish and Game Commission would be helpless in its endeavor to prohibit the taking of excessive numbers or undersized fish from public streams, if one could retain in his possession all fish taken from private ponds, irrespective of their size and number; because, in penal actions to enforce the game laws, the Commonwealth would be required to prove the contraband in possession of an angler was taken from a public stream, and not from private waters. The Legislature made no exception, and the courts may not, especially when to do so virtually would destroy the force of the Act. The Legislature

has not attempted to interfere with appellee in the exercise of his individual rights in respect to the fish in his pond. It has attempted to regulate only the public invited to fish in the pond. If, to enforce the law in respect to public property, it becomes necessary to regulate private property, such may be done by the State in the exercise of its police power; for it has been said the police power is 'coextensive with the necessities. of the case and the safeguards of public interest'."

Holland v. Flora, 284 S.W. 2d 824 (Ky. 1955), followed *Draffen*. The owner of a private lake, charging a fee for persons to fish in it, sought an injunction against the state conservation officers, from checking the fishing licenses of patrons engaged in fishing on the lake. Denying the relief, the court followed *Draffen*. It again observed that effective control "could be had only if private waters were regulated also, because, to hold otherwise, the difficulties of enforcement would be insurmountable." It concluded that under the State's police power it could regulate private property in question to the extent necessary to produce effective enforcement of the wild life laws relating to public property.

Vickers v. Jones, 200 Ga. 338, 37 S.E. 2d 205 (1946), involved a Georgia statute also somewhat similar to section 5904. That act provided that no resident of the state should fish in any of the waters of the state without first procuring a fishing license, exempting owners of the lake. The court held the legislative language was clear, and required licenses of invitees of the owner; and "private ownership of the pond and consent of the owner would both be immaterial in determining whether persons other than the owner would be subject to license under the statute."

In Dargen v. Richardson, 229 S. C. 135, 92 S.E. 2d 167 (1956), the owner of a pond brought an action against conservation officers to enjoin them from interfering with the owner's customers who fished for a fee in the

owner's pond without a state fishing license. The South Carolina statute, somewhat similar to section 5904, made it unlawful for any person to fish in fresh water of the state "with manufactured tackle" unless he had a license; and "all non-residents fishing in this state must have a license." Plaintiff contended that the licensing act did not apply to privately owned lakes not connected with other streams of water. The court rejected this argument in these terms:

"The words 'entirely segregated from other waters' are conspicuous for their absence in the licensing features of the Acts heretofore referred to which indicates that the Legislature was of the mind and purpose that such should not be excluded but that at the time it re-enacted the angler's and nonresident's license provisions, intended to maintain and exercise regulatory powers over the 'fresh water of this State,' and the 'inland streams or waters of this State' whether entirely segregated from other waters or not.

"While the private right or ownership may rest in Respondent, . . . such property right or ownership is not such as to be beyond reasonable regulations by the State."

The foregoing cases from Kentucky, Georgia and South Carolina all deal with statutes closely similar in their terminology to section 5904. They concluded there was no exemption of waters which are privately owned and separate.

(Hn 12) By enacting section 5904, the legislature did not attempt to interfere with the owner of the lake in his individual rights to the fish in his pond. The licensing act regulated only the public invited to fish in it. If it becomes necessary to regulate reasonably private property, in order to enforce the law in respect to public property, that may be done by the state in the exercise of its police power. 11 Am. Jur., Constitutional Law, sec. 251. Section 5904 makes no distinction in respect

to the source of supply or how or where the fish may be acquired. Nonresident fishermen, other than the owner of the property and stated minors, must have a fishing license. The legislature was warranted in concluding that this requirement was reasonable and necessary in order to prohibit unlawful fishing in public streams and to protect the rights of the public in the public waters of the state.

In 1939 the Attorney General rendered an opinion that the laws as to game fish did not apply to a wholly owned, land-locked lake. Report Atty. Gen. 1937-1939, pp. 128-129. It had no specific reference to the licensing statutes. Moreover, the Attorney General's office for a number of years apparently has ruled that persons other than owners fishing in private ponds are subject to the payment of a fishing license the same as if fishing in public waters. The State's brief cites several instances of this, and appellee does not deny this interpretation has been followed by the Attorney General and the commission. See Comment, Miss. Game and Fish Regulations, 26 Miss. L.J. 230, 232-233 (1955). Although not controlling, these facts reflect an administrative interpretation of section 5904 which is in accord with our construction of that statute.

Under Code section 1153, the judgment of acquittal cannot be reversed, but this court decides the question for the future guide of the courts and other interested persons when the same question shall arise again. The state will be taxed with the costs of the appeal.

Judgment rendered in accordance with opinion.

*Lee, P. J., and Kyle, Arrington, Gillespie, Rodgers, and Jones, JJ.,* concur.

McGEHEE, C. J., Dissenting:

The controlling opinion herein begins with the statement: "The question is whether a *nonresident* of Mississippi, who pays the owner for the privilege, may fish

in a privately owned, land-locked lake in this state without first obtaining the fishing license required of non-residents by Mississippi Code 1942, Rec., section 5904. Miss. Laws 1956, ch. 151.'' (Italics mine). Whereas the brief of the appellant contains the following statement: ''The affidavit charging the offense in this case merely charged appellee with fishing without a license but, in view of the stipulation filed herein, it is assumed that the same legal question is involved *whether appellee had been a resident or nonresident* even though under the authorities a State may put more restrictions and prohibitions on non-residents. * * *.''

On February 28, 1939, the then attorney-general, through his assistant J. A. Lauderdale, advised the Game and Fish Commission that its regulations could not interfere with the fishing privilege of the owners of private ponds having no communication through which fish are accustomed to pass to other waters. Mr. Lauderdale quoted this rule from 26 C. J. page 623. There is also an annotation in 15 A. L. R. 2d 754, showing that state fishing license laws or other public regulations have no application to fishing in a private lake or pond. In fact, it was conceded at the bar that numerically the decisions are in favor of fishing in artificial lakes and ponds without a fishing license. Only the states of Kentucky, South Carolina, Georgia, and Missouri hold to the contrary. The brief of the appellant contains the following language: ''Red Gap Lake is, according to the stipulation herein, entirely land-locked and is not connected with any natural stream or waterway and is filled only by (the water from) the watershed from the surrounding land of Harsh (the landowner).''

This Court has never passed on the precise question here involved, but in the case of Ex Parte Louis Fritz, 86 Miss. 210, 38 So. 722, it was said that fish ''are incapable, until actually taken, of absolute ownership, *except in artificial lakes or in small ponds that are entirely*

*land-locked.''* (Italics mine). In the case of State Game & Fish Comm. v. Louis Fritz Co., 187 Miss. 539, 193 So. 9, decided in 1940, there were four separate opinions written by members of this Court. One, a per curiam opinion, and then separate opinions by Chief Justice Sydney Smith, Justice George H. Ethridge and Justice V. A. Griffith. The writer hereof joined Justice Griffith in his separate opinion, and Justices McGowan and Anderson joined us in part and joined Chief Justice Smith in part. In all of these opinions the Court again repeated the language as it is above quoted from the opinion in the first Fritz case. In other words, all of the members of the Court recognized that fish were capable of absolute ownership in artificial lakes or in small ponds that are entirely land-locked. If the landowner has absolute ownership of the fish that he bought and paid for and placed in an artificial lake constructed by him, then it would seem that he would have the right to permit his friends to fish in his lake or pond without paying a $6 license fee. In other words, the regulations made by the State Game and Fish Commission would have no application to artificial lakes and ponds that are entirely land-locked. The State on this appeal repeatedly recognizes in its brief that Red Gap Lake is entirely land-locked. That is to say, there is no natural outlet from this lake into other waters and that there is no inlet from other waters into Red Gap Lake.

Since, in 1951 Mr. Harsh went out onto his land between two hills, constructed a dam across the lower end of a low place thereon where there was then no water so as to impound the water falling on his other land into a land-locked lake and bought and paid for the fish placed therein, he would have the right to remove the dam at any time he saw fit, and to thereby destroy the lake or to permit his friends to fish therein without being subject to the regulations of the State Game and

Fish Commission, which, in my opinion, has no jurisdiction over an artificial and entirely land-locked lake.

Section 5906, Code of 1942, authorizes the State Game and Fish Commission to regulate fishing in the "fresh waters of Mississippi". In my opinion Red Gap Lake is not a part of the waters of Mississippi. They are the waters of Mr. Harsh, the landowner who constructed the lake. I do not think that it was ever the intention of the state legislature for the rules and regulations of the State Game & Fish Commission to apply to artificial lakes and to land-locked ponds, privately owned.

In the case of Draffen v. Black, 202 Ky. 775, 196 SW 2d 362, the Kentucky court was dealing with a statute which expressly imposed a license fee upon one fishing, whether in "public or private" waters. Our statute does not expressly require a license fee for fishing in private waters, and I think that in view of what was said in the cases of Ex Parte Fritz, supra, and State Game & Fish Comm. v. Louis Fritz Co., supra, the Legislature did not intend that a license should be required where a landowner invites his friends to fish with him in his own private lake.

Whenever our statutes speak of regulating the taking of fish they expressly refer to "its waters", "waters of Mississippi", and "fresh waters of Mississippi". I do not think that they have reference to privately owned lakes that are land-locked, and I therefore respectfully dissent.

*McElroy, J.*, joins in this dissent.