The LOUISVILLE TRUST COMPANY,
et al., Plaintiffs-Appellees,

v.

Patricia R. SMITH, Defendant-Appellant.

No. 15246.

United States Court of Appeals
Sixth Circuit.

April 17, 1964.

Robert G. McIntosh, Cincinnati, Ohio (Walter B. Smith, Louisville, Ky., on the brief), for appellant.

Lee Blackwell, Louisville, Ky. (Irvin Marcus, Louisville, Ky., for the Louisville Trust Co.; R. Lee Blackwell, Louisville, Ky., for Citizens Fidelity Bank & Trust Co., Joint Administrators of the Estate of John A. O'Brien, deceased, on the brief; Bullitt, Dawson & Tarrant, Louisville, Ky., of counsel for Citizens Fidelity Bank & Trust Co.), for appellees.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

PHILLIPS, Circuit Judge.

This appeal is another step in protracted litigation involving the estate of the late John A. O'Brien of Louisville, Kentucky, who died January 1, 1934. Appellant is the widow of said decedent, and has since remarried. Appellees are the joint administrators with the will annexed.

The joint administrators filed this action against the widow in the Circuit Court for Jefferson County, Kentucky, chancery branch, alleging, among other things, that distributions have been made to her, or at her direction, in the amount of $432,708.22; that at the time of these payments, the joint administrators believed that the balance of the estate would be adequate to pay all liabilities; but that upon the making of the final settlement the residue has proved to be insufficient to pay all the obligations now owed by the estate. A recovery of $42,-968.12 in overdistributions was sought under K.R.S. § 396.140.[1]

1. "When a personal representative pays to a creditor an undue proportion of his demand or to a distributee or devisee a part or all of his share of legacy, un-

The case was removed to the United States District Court by petition of the widow, upon the ground of diversity of citizenship. The widow thereupon filed a counterclaim demanding judgment against the joint administrators in the sum of $822,035.04, alleging that she had suffered losses in this amount as a result of the negligence, misconduct, disloyalty and fraud of the joint administrators. Thereafter the widow undertook to file an amended counterclaim and a second amended counterclaim.

The District Judge, the Honorable W. Wallace Kent, sitting by designation, rendered a comprehensive opinion which is reported at 192 F.Supp. 396. Summary judgment was entered against the widow for $42,968.12, with interest thereon at the rate of six per cent per annum from March 5, 1952, the date of the approval of the final settlement. A motion by the joint administrators to dismiss the widow's original counterclaim was sustained on the ground that the counterclaim was barred by limitations and by application of the rule of res judicata. Filing of the first and second amended counterclaims was denied because they involved probate matters upon which a final settlement had been made from which the widow had not perfected an appeal in the state courts. The pertinent facts concerning this case and previous litigation involving this estate are recited fully in the opinion of the District Court and will not be repeated here except to the extent necessary to dispose of this appeal.

In support of her appeal the widow has filed a printed appendix comprising 2174 pages, setting forth details concerning the administration of this estate and the extensive litigation between appellant and appellees over a period of more than a quarter century.[2]

We first consider the action of the District Court in dismissing appellant's counterclaim under the rule of res judicata. This rule was stated by the Court of Appeals of Kentucky in Vaughn's Adm'r v. Louisville & N. R. R., 297 Ky. 309, 314, 179 S.W.2d 441, 444, 152 A.L.R. 1060, 1063, as follows:

"As a plea, a former adjudication is a bar to subsequent suits for the same cause; * * *. The rule of res judicata means that when a court of competent jurisdiction has determined a fact or question which was actually and directly in issue in a former suit, the judgment until reversed or modified, is final and conclusive in respect to such fact or question as between the parties to the suit and their privies."

In Hays v. Sturgill, 302 Ky. 31, 34, 193 S.W.2d 648, 650, 164 A.L.R. 868, 871, the Court said: "The rule that issues which have been once litigated cannot be the subject matter of later action is not only salutary but necessary in the administration of justice." To the same effect this Court said in Davis v. McKinnon & Mooney, 266 F.2d 870, 872 (C.A. 6):

"It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action."

der a mistake as to the solvency of the estate or otherwise, he may recover from the creditor, distributee or devisee the amount of the overpayment, with interest."

2. A summary of previous litigation between the parties appears in a lengthy footnote at 192 F.Supp. at 398.

■ Included among the numerous suits between the parties arising out of the administration of this estate was an action filed by the widow in the Circuit Court of Jefferson County on March 10, 1937, against the joint administrators and other parties, referred to in the record as "the recession suit." This case was decided adversely to the widow by the Court of Appeals of Kentucky on June 19, 1942. O'Brien v. O'Brien, et al., 294 Ky. 793, 172 S.W.2d 595, cert. denied, 321 U.S. 767, 64 S.Ct. 518, 88 L.Ed. 1063, rehearing denied, 322 U.S. 769. We agree with the District Judge that the claims of fraud asserted by the widow in her counterclaim in the *instant* case were adjudicated by the Kentucky courts in O'Brien v. O'Brien et al., supra. We hold that this adjudication, together with the final settlement of the accounts of the joint administrators which is discussed below, is a complete bar to the right of action asserted in the counterclaim.

■ Appellant contends that the rule of res judicata is not controlling in this case because the joint administrators were only nominal parties in O'Brien v. O'Brien et al., supra, that no affirmative relief was sought against them in that litigation, and that the counterclaim contains averments that go beyond the precise issues adjudicated in that case. In Eversole v. Webb, 243 S.W.2d 490, 492, the Kentucky Court of Appeals said:

"When a matter is in litigation the parties to it are required to bring forward their whole case. The plea of res judicata applies not only to the points placed in issue by the parties upon which the court is required to pronounce judgment but to every point which properly belonged to the subject of litigation and which the parties by reasonable diligence might have brought forward at the time. Res judicata is binding upon privies as well as parties to the former action."

To like effect see Warring v. Munson, 335 S.W.2d 920, 922 (Ky.).

Appellant further contends that the settlement of the joint administrators is not "final" and therefore is not a bar to her counterclaim. This question is disposed of later in this opinion.

Upon the basis of these authorities we affirm the action of the District Court in applying the rule of res judicata and in dismissing the counterclaim on that ground.

As an additional basis for dismissing the counterclaim, the District Court held that the right of action asserted therein was barred by limitations. In view of our holding on the question of res judicata, we do not find it necessary to discuss in this opinion the question of the statute of limitations.

Next we consider the action of the District Court in denying the motions of appellant to file her first and second amended answers and counterclaims.

The first amended answer and counterclaim consists of 47 printed pages plus six exhibits. It attacks and seeks a review in many particulars of the final settlement of the joint administrators and demands that said settlement be surcharged and various items disallowed. The second amended answer and counterclaim consists of 30 printed pages and 35 exhibits. It prays, among other things, that the widow be credited with various expenditures and expenses connected with the administration of the estate and the litigation ensuing therefrom; that the allowance of fees to the joint administrators and their attorneys as determined in the final settlement be readjudicated and that the District Court adjudge that the joint administrators and their attorneys are not entitled to any fees for their services in any of the lawsuits that have been filed and prosecuted in said estate; and that an attorney's fee for appellant's attorney be allowed and fixed by the District Court. The effect of the two amended counterclaims, if permitted to be filed, would be to reopen the administration of said estate and have the District Court sit as a probate court on various questions involved in this administration.

It is well settled, as held by the District Court, that district courts have no jurisdiction over probate matters. See Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664; Farrell v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101; Byers v. McAuley, 149 U.S. 608, 615, 13 S.Ct. 906, 37 L.Ed. 867; Broderick's Will, 88 U.S. (21 Wall.) 503, 22 L.Ed. 599; Moore's Federal Practice, Vol. 1, p. 604; and authorities cited by District Court, 192 F.Supp. at 402.

As a further ground for refusing to permit the filing of the amended answers and counterclaims, the District Court held that the order of the County Court of Jefferson County, Kentucky, entered March 5, 1952, and amended May 1, 1952, approving the final settlement of the joint administrators, was a final order from which appellant did not perfect an appeal in the state courts, and, therefore, could not be reopened or reviewed by the District Court under the averments of the two amended counterclaims tendered by appellant.

Appellant contends that the settlement of the joint administrators was not final under Kentucky law and could be attacked by way of an equitable action to surcharge and falsify at any time within five years. Appellant asserts that there are two ways under Kentucky law to challenge the final settlement of accounts of an executor or administrator: (1) The party feeling aggrieved by the settlement may file exceptions thereto and appeal to the State Circuit Court from the action of the County Court; or (2) the aggrieved party may let the settlement be confirmed and approved by the County Court without written exceptions and file an action within five years to surcharge the settlement on ground of error, mistake or fraud. In support of this position appellant cites Turley's Administrator v. Barnes, 103 Ky. 127, 44 S.W. 446; Dees' Admr. v. Dees' Extr. et al., 249 Ky. 650, 61 S.W.2d 301; and Harper v. Lamb, 202 Ky. 771, 261 S.W. 280. Appellant further relies upon K.R.S. § 25.200, which provides that "Settlements so made and recorded shall be prima facie evidence between the parties interested."

It is the contention of appellant that since she never filed any formal exceptions to the settlement, it was only prima facie correct under the Kentucky statute, and could be surcharged and falsified at any time within five years; that the settlement was approved by the County Court March 5, 1952, and amended May 1, 1952; and therefore the first amended counterclaim, tendered February 23, 1957, seeking to surcharge the settlement, was timely and the District Court should have allowed the filing of this amended counterclaim as well as the second amended counterclaim which was tendered May 15, 1961.

In Bell v. Henshaw's Ex'rs., 91 Ky. 430, 15 S.W. 3, the Court of Appeals of Kentucky defined the distinction between (1) settlements which are only prima facie correct and may be attacked by equitable action within five years and (2) settlements which become final unless appealed from within 30 days, saying:

"By virtue of the provisions of the act of May 5, 1880, appeals are allowed from settlements made by fiduciaries in the county court to the circuit court, and, while a settlement made is only *prima facie* evidence of its correctness, this is only so when the parties in interest fail to appear and contest the validity of the settlement, or some part of it, made by the fiduciary.

\*　　\*　　\*　　\*　　\*　　\*

"It is clear that a devisee or distributee cannot, as the law now stands, contest the settlement by the fiduciary in both the county and circuit court, and when he contests its validity in the county court his remedy is by an appeal. Cases may arise that would authorize a review of the settlement, such as would entitle the party to a bill of review; but in settlements as they usually take place, where the party is before the court contesting the right of the fiduciary to credits, he is precluded from surcharging the settlement in

another tribunal." 91 Ky. at 431–432, 15 S.W. at 4.

In Turley's Adm'r. v. Barnes, 103 Ky. 127, 44 S.W. 446, which is one of the cases relied upon by appellant, the Kentucky court said that right of appeal from a settlement made in the County Court is not taken away "from parties who do not file such exceptions, or *in any way contest* in the county court the validity of the charges complained of." 103 Ky. at 132, 44 S.W. at 447 (Emphasis supplied).

In one of the suits involving this estate, Smith v. Shamburger, 314 Ky. 850, 238 S.W.2d 844, the Kentucky Court of Appeals explicitly pointed out that the County Court has judicially determined the accounting filed by the joint administrators to be "a final settlement," 314 Ky. at 854, 238 S.W.2d at 846, and that the widow, appellant herein, "can obtain adequate relief therefrom by an appeal." 314 Ky. at 856, 238 S.W.2d at 848.

 Appellant places strong reliance upon the fact that, although she participated in the proceedings involving the settlement made by the joint administrators in the County Court, she never filed any formal exceptions thereto. She

therefore insists that she had a right to attack and surcharge the settlement at any time within five years, and could do so by her amended counterclaims tendered in the District Court. It appears that the conventional procedure in Kentucky for a distributee to contest the settlement of an executor or administrator is by filing exceptions. There is language in some of the decisions relied upon by appellant to the effect that a settlement is not final and appealable as to a distributee unless and until such exceptions are filed. Upon the basis of the authorities hereinabove cited, however, we construe the Kentucky rule to be that if the appellant participated in the settlement proceedings by contesting, resisting, objecting to or challenging the accounts, the settlement became final and binding upon her even in the absence of formal exceptions, and her sole remedy was to appeal from the settlement in the state courts. We agree with the District Court that appellant "took part in and participated in the settlement of the final account within the meaning of Kentucky law," and that "[s]he cannot now be permitted to challenge this settlement in this action." [3] It follows that the District Judge was correct in

3. The record shows that appellant participated as follows in the final settlement proceedings in the County Court:

(1) On July 1, 1950, she moved the County Court "for an extension of time to file exceptions and answer or plead" to the settlement, supported by the affidavit of her attorney;

(2) On July 3, 1950, she moved the County Court, upon additional grounds, for an extension to September 4, 1950, "to file proper exceptions, answers and pleas herein," pursuant to which the County Court entered an order allowing her until August 7, 1950, within which "to file her exceptions and answer or plead herein";

(3) On August 7, 1950, she "objected" to the County Court "confirming, or approving, or hearing any proof on any item" contained in the accounts of the joint administrators, and again moved that "the time be extended for the filing of exceptions, objections and answer thereto," pursuant to which the Court entered an order stating that appellant had appeared in person and by her attor-

ney "and filed objections to said settlement and this matter is ordered passed to August 22, 1950, for hearing";

(4) On August 22, 1950, she filed a motion "to strike from the record of this estate" the settlement of the joint administrators; and on the same date the County Court entered an order that the settlement proceedings "coming on to be heard on pleas, objections and exceptions filed by Counsel for Patricia R. Smith to the settlement," they were referred to a special commissioner;

(5) On September 1, 1950, she moved for a reconsideration of the motions and objections which she had filed on August 7 and August 22, 1950, and that the County Court set aside its August 22, 1950, order appointing a special commissioner, which motion was overruled on September 8, 1950;

(6) On September 8, 1950, upon consideration of appellant's contention that the settlement of the joint administrators was not a "final settlement," the County Court entered its formal order by which it adjudged such settlement to be "a

disallowing the filing of appellant's amended answers and counterclaims.

■ Finally we consider the action of the District Court in rendering summary judgment against the appellant for over-distributions in the amount of $42,968.12, plus interest from March 5, 1952. The amount of this judgment is based upon the adjudication previously made by the County Court of Jefferson County, which is quoted in full in a footnote in 192 F.Supp. at 403. Appellant did not appeal in the state courts from this judgment, and we hereinabove have held that it is a final and binding adjudication approving the final settlement of this estate. We hold that the District Court correctly entered summary judgment in the amount adjudicated by the County Court.

We disagree, however, with the action of the District Court in awarding interest against appellant from March 5, 1952. It is our opinion that it would be inequitable under the circumstances of this case to require the widow to pay interest on the amount of the over-distributions made to her by the joint administrators.

The judgment therefore will be modified to the extent that it awards interest from March 5, 1952, and so as to provide that the plaintiffs have and recover from defendant, Patricia R. Smith, the sum of $42,968.12, with interest thereon at the rate of six per cent per annum from November 9, 1962, which was the date of the entry of the judgment in this case. In all other respects the judgment of the District Court is affirmed and the case is remanded to the District Court for any further necessary action not inconsistent with this opinion.

final settlement of their accounts as Co-Administrator";

(7) On October 3, 1950, she filed an original suit for mandamus in the Kentucky Court of Appeals against the County Judge, upon which a temporary injunction was issued staying proceedings in connection with the final settlement; on January 26, 1951, the Kentucky Court of Appeals denied the petition for mandamus, Smith v. Shamburger, 314 Ky. 850, 238 S.W.2d 844;

(8) On June 12, 1951, appellant applied to the County Judge for at least ten days from the filing of the mandate from the Court of Appeals "in which to plead or file exceptions."

(9) On July 11, 1951, she moved that neither the County Judge nor the special commissioner "confirm or approve" "any item in the co-administrators' settlement of accounts" "until thirty days after" 41 "lost documents" had been supplied;

(10) On July 13, 1951, she served on the County Judge a summons in a Circuit Court suit which she that day filed against the County Judge, in which the Circuit Court enjoined the County Judge from proceeding in the final settlement "until further order of the court," and a commissioner was appointed in the Circuit Court to hold hearings for supplying the 41 "lost documents";

(11) On July 26, 1951, she obtained from the Kentucky Court of Appeals a further temporary injunction against the

final settlement proceedings, in connection with the "lost documents";

(12) On September 14, 1951, she filed in the County Court her objections to, and a motion to strike, an order with reference to the "lost documents" which the joint administrators had filed with the County Judge two days earlier;

(13) On September 18, 1951, she filed in the Circuit Court her objections to the Circuit Court commissioner's report with reference to the "lost documents";

(14) On October 1, 1951, she filed in the Circuit Court a notice that she had on that date filed a petition for removal, to remove the final settlement from the County Court to the U. S. District Court;

(15) On December 17, 1951, she filed in the County Court objections to hearing of settlement;

(16) On December 28, 1951, she moved the County Court to quash a summons which it had issued against her;

(17) On January 31, 1952, she moved that the County Court set aside the special commissioner's report and supplemental report;

(18) On January 31, 1952, she again moved the County Court "to extend the time * * * to file exceptions to the so-called final settlement of the estate and to the Commissioner's Report and Supplemental Report thereon"; and

(19) On February 4, 1952, she again moved and was granted until March 3, 1952, to file such exceptions.