## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CC-01783-SCT

*IGT*

*v.*

*NANCY KELLY*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/1998 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BEN H. STONE |
| | PAUL J. DELCAMBRE |
| | SCOTT E. ANDRESS |
| ATTORNEYS FOR APPELLEE: | BETSY E. WALKER |
| | JAMES ROBERT MURRELL, III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED AND REMANDED - 03/01/2001 |
| MOTION FOR REHEARING FILED: | 05/04/2000 |
| MANDATE ISSUED: | 3/22/2001 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. IGT's motion for rehearing is granted, and the prior opinion is withdrawn. This opinion is substituted in its place.

¶2. On September 28, 1996, Nancy Kelly ("Kelly") was playing an IGT Bonus Pokermania progressive video poker machine at Treasure Bay Casino in Biloxi, Mississippi. The machine advertised a $250,136.91 pay line for a Sequential Royal Flush in Hearts with all five coins played. Kelly's play resulted in a descending sequential royal heart flush.[1] At that point, Kelly assumed she had won the primary progressive jackpot and requested her payoff. Kelly was then told that only an ascending sequential royal heart flush qualified for the primary progressive jackpot.[2]

¶3. Pursuant to Mississippi Gaming Commission regulations, an investigation was conducted by Enforcement Agent David Kingman ("Kingman"). Kingman found that Kelly only won the secondary progressive jackpot of $1,123.14, and not the primary progressive jackpot of $250,136.91. Kelly appealed Kingman's ruling and requested a hearing before the Mississippi Gaming Commission. A hearing was conducted by Larry Stroud ("Stroud"), a Hearing Examiner for the Mississippi Gaming Commission. Stroud overturned Kingman's ruling and found Kelly was entitled to the primary progressive jackpot of

$250,136.91. The Mississippi Gaming Commission adopted Stroud's findings, which concluded both card combinations qualified for the $250,136.91 jackpot, since the machine's sign was ambiguous by not specifying that only 10-J-Q-K-A, read left to right, would win.

¶4. IGT appealed to the Harrison County Circuit Court, which affirmed the decision of the Mississippi Gaming Commission. IGT then appealed to this Court, disputing the findings of the gaming commission and circuit court. IGT asserted that if it was, in fact, required by this Court to pay, it should be allowed to do so over a twenty-year period, and not in one lump-sum payment. We affirmed the circuit court's decision on April 20, 2000. Finding that IGT had raised the issue of periodic payments for the first time on appeal, we held that IGT must pay Kelly the lump sum of her winnings.

¶5. On May 4, 2000, IGT filed a motion for rehearing. We grant the motion, withdraw our original opinion, and substitute this one in its place. The judgment of the Harrison County Circuit Court is affirmed, and the case is remanded to the circuit court for entry of a judgment specifying the method of payment in accordance with applicable law.

## STANDARD OF REVIEW

¶6. "This Court affords great deference to an administrative agency in interpreting its own regulations." *Mississippi Gaming Comm'n v. Board of Educ.*, 691 So.2d 452, 455 (Miss. 1997). Accordingly, this Court must adhere to its "deferential standard of review" of the findings of an administrative agency as codified in Miss. Code Ann. § 75-76-171 (1991). *Mississippi Gaming Comm'n v. Freeman*, 747 So.2d 231, 240 (Miss. 1999); *see Casino Magic Corp. v. Ladner*, 666 So. 2d 452, 456-58 (Miss. 1995). Miss. Code Ann. § 75-76-171 (2000) provides in relevant part:

> (2) The review must be conducted by the court sitting without a jury and must not be a trial de novo but it confined to the record on review
>
> (3) The reviewing court may affirm the decision and order of the commission, or it may remand the case for further proceedings or reverse the decision if the substantial rights of the petitioner have been prejudiced because the decision is:
>
> (a) In violation of constitutional provisions;
>
> (b) In excess of the statutory authority or jurisdiction of the commission;
>
> (c) Made upon lawful procedure;
>
> (d) Unsupported by *any evidence*; or
>
> (e) Arbitrary or capricious or otherwise not in accordance with law.

(emphasis added). Because no such errors occurred in this case, this Court finds the Harrison County Circuit Court was correct in affirming the Mississippi Gaming Commission's ruling, which found the Pokermania machine's signage to be ambiguous.

## DISCUSSION

### I.

**WHETHER THE MACHINE'S SIGNAGE IS CLEAR AND UNAMBIGUOUS, THEREBY GIVING NOTICE TO PATRONS THAT THERE IS ONLY ONE CARD COMBINATION WHICH QUALIFIES FOR THE PRIMARY PROGRESSIVE JACKPOT**

¶7. The awards glass on the top portion of the machine Kelly was playing states, in relevant part, as follows:

ROYAL FLUSH (Sequential Hearts)...................................Progressive

ROYAL FLUSH.........................................................Mini-Progressive

Also appearing on the awards glass to the right of the machine's video screen and adjacent to the coin slot, is the following statement:

SEQUENTIAL HEART

ROYAL FLUSH (10, J, Q, K, A)

PROGRESSIVE JACKPOT PAID IN

20 EQUAL ANNUAL INSTALLMENTS

FIRST INSTALLMENT PAID UPON

VALIDATION OF WIN.

Kelly maintains that the machine's language "sequential heart royal flush progressive jackpot" was ambiguous since it did not specify that only an ascending royal flush would qualify for the primary progressive jackpot. IGT, however, contends that the machine's signage was not ambiguous and that the parenthetical language of "10, J, Q, K, A" limited the award to only that sequence, read left to right.

¶8. IGT further asserts that the decision of the Mississippi Gaming Commission was not supported by substantial evidence, thus making the commission's decision both arbitrary and capricious. In *Mississippi Gaming Comm'n v. Freeman*, this Court recently held that the proper standard of review "is determined by the [Mississippi Gaming Control] Act." 747 So.2d at 240. Consequently, *Freeman* rejected the "substantial evidence" standard and held that the "any evidence" standard should apply due to the plain language of the statute. *Id*. In the present case, IGT's assertion that a "substantial evidence" standard should be used is misplaced, and this Court will instead apply the "any evidence" standard as set forth in *Freeman*.

¶9. We must now address whether any evidence existed to support the commission's conclusion that the signage on the machine was ambiguous. First, Kelly provided the testimony of Jim Spain, a poker expert. Spain testified a sequential royal flush could be displayed in either ascending or descending order, although the most common way of displaying the sequential royal flush was descending. Second, Ames Kerley, an engineer with the Mississippi Gaming Commission and witness for IGT, also testified, "I would think that a sequential royal flush could be either unless it is further described." Consequently, there seems to be no dispute on either side that a sequential royal flush can be either ascending or descending.

¶10. The dispute thus centers around whether the language on the face of the machine clearly signaled to patrons that *only* the ascending sequential royal flush, *and not the descending royal flush*, qualified for the

jackpot. Both the Mississippi Gaming Commission and the Harrison County Circuit Court found the machine's signage to be ambiguous. This Court agrees.

¶11. IGT argues that the machine's language was not ambiguous because the machine's parenthetical language of "10-J-Q-K-A" served to limit the award of the primary progressive jackpot to only that combination, read left to right. Kelly, however, argues that it is common knowledge a sequential royal flush can be either ascending or descending and absent clarifying or limiting words, the parenthetical language of "10-J-Q-K-A" serves only as an example of a sequential royal flush.

¶12. The machine's signage could reasonably and fairly be interpreted in more than one way. A review of the record indicates that evidence was presented to the Mississippi Gaming Commission which supported the commission's decision. Accordingly, the commission's decisions were neither arbitrary nor capricious and are not within the authority of this Court to overturn. Therefore, this Court affirms the decision of the Harrison County Circuit Court, which found the machine's signage to be ambiguous.

## II.

### WHETHER THE HEARING EXAMINER ERRED BY NOT FOLLOWING THE DECISION OF *MARCANGELO v. BOARDWALK REGENCY CORP.*

¶13. IGT asserts that the hearing examiner erred by not following an earlier decision of a federal court in New Jersey which ruled for the casino in an identical factual situation. *See Marcangelo v. Boardwalk Regency Corp.*, 847 F. Supp. 1222 (D.N.J. 1994). IGT asserts the hearing examiner's decision not to follow the *Marcangelo* case was arbitrary and *Marcangelo* should have been viewed as persuasive authority in Mississippi. Kelly, however, maintains that the present case is distinguishable from *Marcangelo* because Mississippi has not adopted the same regulatory scheme as New Jersey.

¶14. In *Marcangelo*, the plaintiff, like Kelly, achieved a descending sequential royal flush on a Pokermania progressive video poker machine. The casino refused to award the plaintiff the primary progressive jackpot, insisting he was only entitled to the mini-mania because he had a descending sequential royal flush and not the required ascending sequential royal flush noted on the machine. The machine's signage was identical to the signage at issue in the present case. The New Jersey federal district court entered summary judgment in favor of the defendant, stating:

> If the instant case is viewed as one in which the plaintiff believed that the sequence listed on the sign above the coin slot (i.e. "10 J Q K A") was exemplary, while the defendant believed it to be exclusive, no meeting of the minds occurred. Upon recission, the plaintiff would be entitled to restitution of the amount of money he put into the machine - $1.25- provided he returned the $1046.31 he received from defendant. However, plaintiff would not be entitled to recover the amount of the primary progressive jackpot.

*Id.* at 1230. Although the facts of the *Marcangelo* case are very similar to those of the present case, we do not find that the hearing examiner erred by not following *Marcangelo*. It is well-established law in Mississippi that the Supreme Court is not bound by the decisions of courts of other jurisdictions. *Griffith v. Gulf Ref. Co.*, 251 Miss. 15, 36-37, 61 So. 2d 306, 307 (1952). "Such decisions may have persuasive authority....and may be entitled to respectful consideration if well reasoned and promotive of justice, but they are not technically of force as precedent and we are at perfect liberty to disregard them." *Id.* Likewise,

this Court finds an administrative agency is also under no obligation to follow precedent of another jurisdiction. Hearing Examiner Larry Stroud considered *Marcangelo*, and found it distinguishable from the present case. In his decision, Stroud reasoned as follows:

> However, the judge [in *Marcangelo*] was not acting as an administrative agency regulating gaming, including determining patron disputes, but as a court. Basically, the court ruled that a patron's remedy is through the administrative process, not through an original action in court. The administrative process is not limited to the common law theories of meeting of the minds or other points of contract law. The administrative agency in this case already announced in earlier cases that if the posted rules in a casino are ambiguous, then the agency will interpret the rule in favor of the patron if the rule can be reasonably read in that fashion.

Clearly, Stroud was not in error by refusing to follow New Jersey law. Stroud considered the *Marcangelo* case, distinguished it from the present case and based his decision upon similar past rulings of the Mississippi Gaming Commission. Stroud's actions were not arbitrary, and he did not err by declining to follow *Marcangelo*. Accordingly, this Court finds this issue to be without merit.

## III.

### WHETHER THE HEARING EXAMINER ERRED IN RELYING UPON HIS PREVIOUS DECISION OF *SIMS v. RAINBOW CASINO*

¶15. During the hearing, Kelly introduced a previous decision of the Mississippi Gaming Commission, *Sims v. Rainbow Casino*, in support of her position that a sequential royal flush includes both ascending and descending combinations. IGT, however, argues that *Sims* is "entirely distinguishable" from the present case and that it was error for the hearing examiner to rely on this precedent. We disagree.

¶16. In *Sims*, the dispute centered around whether Rainbow Casino in Vicksburg was obligated to pay *both* the regular jackpot and the promotional prize for a sequential royal flush. In the past, Rainbow had paid both jackpots. It later implemented a policy where it only paid the promotional prize and not the regular jackpot. However, Rainbow failed to notify patrons of this change. In *Sims*, the hearing examiner noted, "The Mississippi Gaming Commission has already decided that if a rule can reasonably be interpreted more than one way, then the rule should be interpreted in a manner most favorable to the patron." To allow otherwise, would be "contrary to the historic position of the Mississippi Gaming Commission in its application of the gaming control act and its regulations and its position on vague rules." Consequently, the hearing examiner in *Sims* held that the conflict should be resolved in favor of the patron and ordered the casino to pay the patron the amount in conflict.

¶17. This Court finds no error on the part of the hearing examiner. The Mississippi Gaming Commission's previous decisions clearly set forth the commission's policy of construing ambiguity in favor of the patron. The hearing examiner did not err by following precedent. Accordingly, this issue is without merit.

## IV.

### WHETHER AN AWARD OF THE PRIMARY PROGRESSIVE JACKPOT MAY BE PAID IN TWENTY EQUAL INSTALLMENTS OR WHETHER THE JACKPOT MUST BE A LUMP SUM PAYMENT

¶18. IGT maintains that it should be allowed to pay the sum in periodic payments since the face of the Pokermania machine reads "20 equal annual installments." Kelly, however, maintains that she is entitled to receive one lump sum payment. Further, she continues to assert that the issue of periodic payments was raised for the first time on appeal.

¶19. We again find that this issue was not properly raised at the circuit court level and, thus, was not properly preserved for appeal to this Court. In her motion to dismiss filed on August 12, 1998, Kelly requested that IGT "be ordered to release said winnings immediately." This language does not adequately raise the issue of whether the winnings should be released as a lump sum or in periodic payments. IGT did not respond to Kelly's request by formal pleading but did discuss the issue in its brief responding to her motion to dismiss. Although the issue was addressed in the brief, it was never raised in an actual pleading or motion. Thus, we continue to find that the issue was not sufficiently presented to the circuit court.

¶20. We do find, however, upon closer scrutiny of the record, that it was error for us to order that Kelly be paid a lump sum. While IGT did not sufficiently raise its demand for periodic payments, Kelly likewise did not raise the issue of a lump-sum payment.

¶21. Pursuant to the Mississippi Gaming Commission Regulations, winnings of $200,000 or more may be paid over a twenty-year period. Miss. Gaming Comm'n R. III. A. 9(e)(2). The regulations state "[t]he first payment must be made upon validation of the win." *Id*. III. A. 9(e)(4). IGT argues that the method of payment was never raised before the hearing examiner because both parties expected the regulations to apply and assumed that, in the event Kelly prevailed, the payments would be made periodically.

¶22. Kelly argues, where there is a judicial review, the gaming regulations are overridden by statute. Miss. Code Ann. § 75-76-165(2)(2000) provides:

> If a licensee intends to file a petition for judicial review of the commission's decision pursuant to Sections 75-76-167 through 75-76-173, inclusive, the licensee must first deposit in an interest-bearing account in a financial institution an amount equal to the amount in dispute. The licensee shall pay the full amount of the patron's claim, including interest, within twenty (20) days after a final, nonappealable order of a court of competent jurisdiction so directs.

¶23. In its order affirming the ruling of the gaming commission, the circuit court failed to address the issue of payment method. In our previous opinion in this case, we ruled that because the issue was not raised before the circuit court, "[c]onsequently, IGT must pay Kelly the lump sum as originally required in the hearing examiner's decision." We now find that neither the hearing examiner's decision nor the decision of the commission was clear as to the payment method. We do not know whether the circuit court intended application of the gaming regulations which allow periodic payment or if it intended a lump sum. The parties' failure to properly raise the issue prevents us from examining whether the statute is in conflict or in harmony with the regulations. Though we are precluded from answering this question, the simple fact remains that IGT must be informed of exactly how to pay Kelly's winnings. Therefore, we remand to the Harrison County Circuit Court to make this determination.

## CONCLUSION

¶24. This case simply boils down to whether a Pokermania machine can be read from both left to right and right to left. As Nancy Kelly might argue, "what goes up, must come down." Or perhaps more

appropriately put, "what reads left, must read right."

¶25. Accordingly, this Court finds the Harrison County Circuit Court was correct in affirming the Mississippi Gaming Commission's ruling, which found the Pokermania machine's signage to be ambiguous. We also conclude an administrative agency is not bound to follow authority in another jurisdiction and that the hearing examiner did not err by relying on a previous decision of the Mississippi Gaming Commission, which states ambiguity is to be resolved in favor of the patron. The judgment of the Harrison County Circuit Court is affirmed, and the case is remanded to the circuit court for entry of a judgment specifying the method of payment in accordance with applicable law.

¶26. **AFFIRMED AND REMANDED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**

1. **Descending** Sequential Royal Flush: A-K-Q-J-10

2. **Ascending** Sequential Royal Flush: 10-J-Q-K-A