# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00333-SCT

*NANCY KELLY*

*v.*

*INTERNATIONAL GAMES TECHNOLOGY*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/28/2002 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BETSY E. WALKER |
| | JAMES ROBERT MURRELL, III |
| ATTORNEYS FOR APPELLEE: | SCOTT E. ANDRESS |
| | BEN HARRY STONE |
| | PAUL J. DELCAMBRE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND RENDERED IN PART - 06/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This appeal involves a dispute over how a video poker, progressive jackpot should be paid. Nancy Kelly, who won the jackpot, wants it paid immediately in a lump sum. International Games Technology (IGT), which operated the video poker machine where Kelly won the jackpot, wants to pay in annual installments over twenty years.[1]

---

[1] This is our second look at this case. We were initially asked to determine whether Kelly actually won a Pokermania progressive jackpot in the amount of $250,136.91. We found that she did. For an in-depth recitation of the facts from which this present appeal arises, see *IGT v. Kelly*, 778 So. 2d 773

¶2.     On September 28, 1996, as Kelly was playing a progressive video poker machine at Treasure Bay Casino[2] in Biloxi, fate smiled upon her. She hit a Royal Flush (A, K, Q, J and 10 of the same suit), which resulted in a win of slightly more than a quarter-million dollars. The lucky video poker machine displayed a sign which stated:

> PROGRESSIVE JACKPOT PAID IN
> 20 EQUAL ANNUAL INSTALLMENTS.
> FIRST INSTALLMENT PAID UPON
> VALIDATION OF WIN.

¶3.     Although a dispute arose over whether Kelly actually won the jackpot, this Court ruled that she did, and remanded for the trial court to determine the appropriate method of payment. The Harrison County Circuit Court entered an order which stated:

> The method of payment of the payout to Kelly for the progressive jackpot from IGT is to be made in accordance with the regulations of the Mississippi Gaming Commission and that the MGC regulations shall determine whether or not the payout is to be in a lump sum or in a periodic payments. To the extent that there is a dispute regarding this issue, this factual matter is to be decided by the Mississippi Gaming Commission.

¶4.     Kelly filed a Motion to Reconsider or in the Alternative to Clarify the Court's Order. She requested a full hearing on the issue as to the form of payout or in the alternative to clarify whether it (the trial court) was asking the Mississippi Gaming Commission to determine the method of payment. Subsequently, the trial court entered a judgment denying Kelly's motion and reversing its original deferral or remand to the Mississippi Gaming Commission, and further ruled:

> With respect to the Motion for Clarification, the Court states that it has found that the Regulations of the Mississippi Gaming Commission govern the payout of jackpot winnings.

_____

(Miss. 2001).

[2]Although the jackpot was won at Treasure Bay Casino, the video poker machine was operated by IGT, which was, and is, liable for payment of jackpots. Thus, Treasure Bay is not a party to this dispute.

That these regulations allow certain jackpots to be paid out in periodic payments as opposed to a lump sum payment, and that such regulations are applicable to the payout of jackpot due to Kelly.

¶5.	Kelly then filed this appeal. The issue now before this Court is whether the trial court erred in determining that the regulations of the Mississippi Gaming Commission applied as the method of payment in this matter, finding that Kelly should be paid in twenty equal annual installments, rather than in a lump sum amount.

¶6.	Kelly raises sixteen issues including; whether the $250,136.91 to which she is entitled is a judgment against IGT; whether she should be awarded attorneys' fees, court costs and interest; and if she is awarded interest, the appropriate rate and the time from which the interest should accumulate. Kelly also raises issues of the interpretation of Miss. Code Ann. § 75-7-157 through § 75-76-165, as those statutes relate to Mississippi Gaming Regulation III. A.9; whether the trial court proceedings following remand from this Court were procedurally flawed; and whether the trial court's subsequent ruling was erroneous.

## STANDARD OF REVIEW

¶7.	In *Secretary of State v. Wiesenberg*, 633 So. 2d 983 (Miss. 1994) (quoting *Aikerson v. State*, 274 So.2d 124 (Miss. 1973)), this Court said: "It is a general rule in construing statutes that this Court will not only interpret the words used, but will consider the purpose and policy which the legislature had in view of enacting the law. The court will then give effect to the intent of the legislature."

## DISCUSSION OF LAW

¶8.	We find that the issues raised by Kelly can most succinctly be stated as follows:

   **I.	Whether Kelly is entitled to receive the Pokermania Progressive Jackpot in a single lump sum payment with interest and whether she should be awarded attorney's fees and court cost.**

3

*A.     Whether Lump Sum Payment Is Appropriate.*

¶9.     Miss. Code Ann. § 75-76-165(2), sets forth the procedure a licensee[3] must follow when it seeks judicial review of the Commission's decision concerning a disputed jackpot. First, § 75-76-165(2) requires that the licensee deposit "an amount equal to the amount in dispute" in an interest bearing account until the licensee is ordered to pay the patron's claim or a final judicial determination has been reached that the licensee does not have to pay the claim.[4]

¶10.     Secondly, § 75-76-165(2) requires the licensee to pay "the full amount of the patron's claim, including interest, within twenty (20) days after a final, nonappealable order of a court of competent jurisdiction so directs."

¶11.     Contrary to the position taken by Kelly, the statute does not transform her jackpot of twenty periodic payments to a single, lump-sum payment. Rather, the statute provides that Kelly must be paid her "claim," that is to say, her legitimate claim. To follow Kelly's logic, she could simply allege that she is entitled to a million dollars. Her saying so does not transform the demand into her "claim." This Court held that she won the jackpot. The jackpot she won was clearly described on the face of the machine she chose to play. It provided that she would be paid in 20 equal annual installments. That is her legitimate claim. Thus, IGT must pay the "claim" as it contracted to do – in 20 equal annual installments.     ¶12.

Section 9 of Mississippi Gaming Commission Regulation III., A., addresses "Periodic Payments." The specific language from Section 9 relied upon by IGT provides: "For amounts won equal to or in excess of $200,000, payments shall be no less than 1/20th of the total amount annually." *Id.*, at subsection (e)(2).

---

[3]A licensee is any person to whom a valid license has been issued. A license means a gaming license or a manufacturer's, seller's, or distributor's license. Miss. Code Ann. § 75-76-5.

[4]It is undisputed that, on February 10, 1998, IGT deposited $250,136.91 into an interest-bearing account at Hancock Bank.

4

IGT cites this subsection, and this Court's opinion in ***Cook v. Mardi Gras Casino Corp***., 697. So.2d 378 (Miss. 1997), for the proposition that this Court has "expressly recognized and authorized the use of periodic payments."

¶13. Despite IGT's assertions, ***Cook did not*** expressly recognize nor authorize the use of periodic payments. Rather, the portion of ***Cook*** relied upon by IGT is taken directly from the facts of that opinion. In ***Cook***, the trial court found that it did not have jurisdiction over the cause due to the patron's failure to follow administrative remedies, i.e. appealing the executive director's decision to the full Commission. ***Id***. This Court affirmed finding that the patron failed to exhaust administrative remedies. ***Id***. at 383. Nowhere in the discussion of law did this Court comment on the use of periodic payments.

¶14. Furthermore, contrary to the position taken by IGT, the language of the regulation does not imbue IGT with the "right" to pay Kelly's jackpot in twenty equal annual installments. Rather, the language simply prohibits IGT from making periodic payments in increments smaller than 1/20th of the amount won.

¶15. In summary, Kelly played a video poker machine which clearly provided that, should she win, her jackpot would be paid in 20 equal annual installments. The terms do not violate the gaming regulations and, therefore, constitute Kelly's legitimate "claim." The statute provides that her claim must be paid, with interest,[5] within twenty days of a nonappealable order from this Court. Thus, within twenty days of this Court's mandate, IGT must pay Kelly:

- the first installment, together with accrued interest from December 30, 1997;
- the second installment, together with accrued interest from December 30, 1998;
- the third installment, together with accrued interest from December 30, 1999;
- the fourth installment, together with accrued interest from December 30, 2000;
- the fifth installment, together with accrued interest from December 30, 2001;

---

[5]    The interest earned in the interest-bearing account must be calculated and applied to the payments which were due prior to December 30, 2004.

- the sixth installment, together with accrued interest from December 30, 2002; and
- the seventh installment, together with accrued interest from December 30, 2003.

¶16.    Thereafter, IGT must make the annual, periodic payments on December 30 of each year until the twenty payments have been satisfied. We assume IGT will follow the allowed method of funding these payments as provided in the gaming regulations. We will not analyze that portion of the regulations since the issue is not before us.

       *B.     Whether Kelly Should Be Awarded Attorney's Fees.*

¶17.    Kelly cites as an assignment of error that IGT should pay attorney's fees; however, she offers no supporting argument or evidence to support her claim. "Issues cannot be decided based on assertions from the briefs alone. The issues must be supported and proved by the record." *Pulphus v. State*, 782 So.2d 1220, 1224 (Miss. 2001). "'The appellant bears the burden on appeal, and we will entertain no claims for which no supporting authority has been cited.'" *Cavett v. State*, 717 So.2d 722, 724 (Miss. 1998) (quoting *De La Beckwith v. State*, 707 So.2d 547, 597 (Miss. 1997)). Further, this Court stated in *Pace v. State*, that there is no duty to review assignments of error unsupported by argument or authority. *Pace v. State*, 419 So.2d 1324, 1325-26 (Miss. 1982). Kelly is not entitled to attorney's fees.

¶18.    Other issues raised have no merit and are not addressed.

## CONCLUSION

¶19.    We affirm the circuit court's finding that IGT may pay the jackpot in periodic payments and its denial of Kelly's claim for attorney's fees.

6

¶20.    We reverse the circuit court, insofar as it held that the gaming regulations control whether Kelly's jackpot should be paid in periodic payments or a lump sum. We render judgment here that, within twenty days of this Court's mandate, IGT must pay Kelly:

- the first installment, together with accrued interest from December 30, 1997;
- the second installment, together with accrued interest from December 30, 1998;
- the third installment, together with accrued interest from December 30, 1999;
- the fourth installment, together with accrued interest from December 30, 2000;
- the fifth installment, together with accrued interest from December 30, 2001;
- the sixth installment, together with accrued interest from December 30, 2002; and
- the seventh installment, together with accrued interest from December 30, 2003.

Thereafter, IGT must make the annual, periodic payments on December 30 of each year until the twenty payments have been satisfied.

¶21.    **AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.**

**SMITH, C.J., WALLER, P.J., CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY EASLEY, J., DIAZ, J., NOT PARTICIPATING.**

**COBB, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶22.    Although I agree with the majority with regard to the issue of attorneys fees, I respectfully disagree with the majority's determination that IGT should pay the jackpot to Nancy Kelly in periodic payments over 20 years. In my view, the plain language of Miss. Code Ann. § 75-76-165 (Rev. 2000) together with our prior decision in this very case on the first appeal by IGT, requires that Kelly be paid the full amount of the jackpot, $250,136.91 plus accrued interest, within twenty days after the mandate issues from this Court.

¶23. To reach that conclusion, I look first to the gaming control statutes and the rules and regulations of the Mississippi Gaming commission, in light of the general rule established by the Commission and ratified by this Court, that "'**if a rule can reasonably be interpreted more than one way, then the rule should be interpreted in a manner most favorable to the patron.'** To allow otherwise, would be 'contrary to the historic position of the Mississippi Gaming Commission in its application of the gaming control act and its regulations and its position on vague rules.'" *IGT v. Kelly*, 778 So. 2d 773, 777 (Miss. 2001) (quoting *Sims v. Rainbow Casino*, Miss. Gaming Comm.) (emphasis added.) The majority appears to discount, or disregard entirely, that rule.

¶24. Miss. Code Ann. § 75-76-165(2) provides in pertinent part:

> (2) If a licensee intends to file a petition for judicial review of the commission's decision pursuant to Sections 75-76-167 through 75-76-173, inclusive, the licensee must first deposit in an interest-bearing account in a financial institution **an amount equal to the amount in dispute.** The licensee shall pay **the full amount of the patron's claim,** including interest, within twenty (20) days after a final, nonappealable order of a court of competent jurisdiction so directs.

(emphasis added). It does **not** say to deposit 1/20th of the amount in dispute, nor does it say deposit the full amount of the first periodic payment. At the time this dispute began, IGT deposited the entire $250,136.91 into a special interest bearing account at Hancock Bank, in compliance with this provision. In my view, it is illogical to now conclude, as the majority does, that "the amount in dispute" and "the full amount of the patron's claim" are two distinct and different amounts.

¶25. Mississippi Gaming Commission Regulation III.A.9(c) contains a general provision that periodic payments **may** be made, but there is no requirement that winnings of any size **must** be made in periodic payments. Regulation III.A.9(e)(2) provides in pertinent part, as follows:

> (e)    Periodic payments must not be used for winnings of or non-cash prizes worth $100,000 or less. . . .

8

(2) For amounts won of $200,000 or more, payments must be no **less** than 1/20th of the total amount annually.

(emphasis added).

¶26. Furthermore, Regulation III. A.9 does not specifically address the method of payment of disputed claims such as we have in this case. In my view, where judicial review is sought by the licensee, the statutory provisions of Miss. Code Ann. § 75-76-165 control, and Regulation III.A.9 no longer applies.

¶27. If a statute is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. *Allred v. Yarborough*, 843 So.2d 727, 729 (Miss. 2003); *City of Natchez v. Sullivan*, 612 So.2d 1087, 1089 (Miss. 1992). The language of § 75-76-165(2) is clear and unambiguous and plainly applies in this case. It does not allow for or direct the use of periodic payments when a licensee seeks judicial review of the Commission's ruling. Thus there is no exception for periodic payments. "Ordinarily, an exception must appear plainly from the express words or necessary intendment of the statute. Where no exception in positive words is made, the presumption is the legislature intended to make none." *State v. Heard*, 246 Miss. 774, 781, 151 So.2d 417, 420 (1963). In effect, IGT asks us to create an exception to the statute, which we should decline to do. If the legislative intent is that such disputed winnings should be paid in installments over a period of years, it is the Legislature's prerogative to amend the statute to so provide.

¶28. Thus, I would hold that IGT must pay Kelly, in lump sum, the full amount of the Pokermania primary progressive jackpot, plus all interest earned since the deposit of those disputed funds in Hancock Bank account #1-074-3313 in the name of "IGT by Eaton and Cottrell, Trustee IGT." Further, I would hold that Regulation III.A.9 does not conflict with § 75-76-165(2) because they operate in totally different factual situations.

9

¶29. I respectfully disagree with the majority and would apply the previous holding of this Court, that "ambiguity is to be resolved in favor of the patron." *Kelly*, 788 So.2d at 779. I would reverse and render on the method of payment.

**RANDOLPH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶30. I concur with the majority that Miss. Code Ann. § 75-76-165 (Rev. 2000) controls payment of a claim following a final judicial determination. However, we must determine what is Kelly's "claim" and the time at which it should be paid.

¶31. In the original appeal, Kelly claimed that she won the Progressive Jackpot rather than the Mini-Progressive Jackpot. *IGT v. Kelly*, 778 So.2d 773 (Miss. 2001). This determination required that the Court interpret the machine's signage, which stated that "SEQUENTIAL HEART ROYAL FLUSH (10, J, Q, K, A) PROGRESSIVE JACKPOT PAID IN 20 EQUAL ANNUAL INSTALLMENTS FIRST INSTALLMENT PAID UPON VALIDATION OF WIN." *Id*. at 775. Finding that a reasonable interpretation of the term "sequential heart royal flush" included both ascending and descending flushes, this Court held that the signage was ambiguous and that she therefore was entitled to the Progressive Jackpot. *Id*. At no time during the first appeal did Kelly dispute that the Progressive Jackpot was to be paid in twenty equal annual installments.

¶32. Had IGT not contested Kelly's "claim", she would have been entitled to receive $250,136.91 in twenty equal installments, with the first installment due upon the validation of the jackpot. Section 75-76-165 does not provide that since IGT sought judicial review, Kelly should get the $250,136.91 in one lump-sum payment as she now claims. Such a result would be contrary to the express provision provided in the signage at the time Kelly placed her wager. Kelly's "claim" is for payments over twenty years. However,

10

§ 75-76-165 mandates she is entitled to receive the full amount of her "claim," within twenty days after a final, nonappealable order from a court of competent jurisdiction.

¶33. For illustrative purposes, suppose that a dispute arose over whether a patron won a $9,000,000 jackpot to be paid over thirty years and that such a dispute was resolved in favor of the patron. Had there been no dispute, the patron would be due $300,000 upon validation of the win and $300,000 annually for the next twenty-nine years. However, if disputed, the patron is due the amount of the "claim" payable within twenty days after a final, nonappealable order from a court of competent jurisdiction. According to my "French market math," the present net value of this hypothetical jackpot would range between $4.5 and $4.8 million using an interest rate of 5%.[6] Thus, by requiring the licensee to pay $9,000,000 plus interest in a lump sum, the patron would receive a windfall in excess of $4,000,000. Such a windfall does not comport with the legislative purpose and intent of § 75-76-165, nor with the principles of fair play. Nothing in the relevant provisions of the Mississippi Gaming Control Act indicates that a penalty is to be imposed if a licensee seeks judicial review of a patron's claim. The due process clauses of both state and federal Constitutions prohibit the arbitrary deprivation of property without providing the person with notice both that his conduct will subject him to punishment and the severity of the penalty that may be imposed. U.S. Const. amend. XIV; Miss. Const. art. 3, § 14 (1890).

¶34. Section 75-76-165 addresses two legislative concerns: finality and security. Finality, in that the Legislature intended to eliminate any future disputes between the parties during the administration of a multi-year installment plan. Security, in that the purpose of § 75-76-165 is to require the licensee to deposit the amount of the claim to secure payment if the patron should prevail or, similarly, to eliminate any concerns

---

[6] The concept of present net cash value is also provided in the model jury instructions to be used in calculating future loss of income in a wrongful death action. *See* Miss Pract. Model Jury Instr. Civil § 20.19 Mississippi Model Jury Instructions Civil Mississippi Judicial College (2nd 1999).

if the licensee ceased to exist before the dispute is resolved. However, a party should not be penalized for contesting an honest dispute, and I am aware of no penalty created by the Legislature for contesting honest disputes.

¶35.    There is only one way to comply with the letter and intent of § 75-76-165's mandate that the "claim" be paid within twenty days: That is to determine the present net value of the twenty year installment plan calculated from the date of her win.  I would remand this case to the circuit court for a determination of this value.  The trial court can appoint a special master as provided under M.R.C.P. 53 to determine the value or allow each party to offer proof of same.  Based on the proof, the trial court should enter a final judgment accordingly.       **EASLEY, J., JOINS THIS OPINION IN PART.**