# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-SA-02063-SCT

*FLORIDA EASH*

*v.*

*IMPERIAL PALACE OF MISSISSIPPI, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/2007 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PAUL M. NEWTON, JR. |
| | JONATHAN B. FAIRBANK |
| ATTORNEYS FOR APPELLEE: | SCOTT E. ANDRESS |
| | BRITT R. SINGLETARY |
| | H. R. WILDER |
| | TARA PIERRE ELLIS |
| | RONALD G. PERESICH |
| | RONALD G. PERESICH, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 02/12/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is a patron dispute between Florida Eash and the Imperial Palace Casino (Imperial Palace).  Eash was playing a slot machine at Imperial Palace and hit a winning combination.  She subsequently initiated a patron dispute over the award for her winning play.  The Mississippi Gaming Commission (the Commission) made a final decision in favor

of Eash. Imperial Palace sought judicial review, and the circuit court reversed the final decision of the Commission. Aggrieved by this decision, Eash appeals to this Court.

**FACTS**

¶2. On February 19, 2006, Florida Eash was playing a $5 Double Top Dollar slot machine at the Imperial Palace Casino in Biloxi, Mississippi. It was the first time that Eash had played this particular machine, and she testified that she did not read the instructions or the description of the possible awards listed on the front of the machine before playing. A patron could play this machine with one or two five-dollar credits wagered. After several plays, and with two five-dollar credits wagered, Eash hit a winning combination – three double diamond symbols lined up on the single pay line. After Eash hit the winning combination, the following words scrolled across the electronic display on the machine (also referred to as the "door VFD[1]"): "Hand Pay Jackpot 200,000 credits." The keypad LCD[2] (also referred to as the "NexGen display") showed that the winnings totaled $1,000,000. Eash and the other patrons around her thought that she had won $1,000,000. However, the front of the Double Top Dollar machine (also referred to as the "belly glass" or the "awards glass") displayed the permanent rules and instructions of the game, and it stated that the maximum award on that

---

[1] Vacuum fluorescence display.

[2] Liquid crystal display.

2

particular machine was $8,000.[3] Nothing on the machine indicated that a patron could win more than $8,000.[4]

¶3.     When Eash hit the winning combination, staff members of the Imperial Palace were notified of the win and approached Eash and the machine. In order to disperse the crowd that had gathered, a staff member cleared the keypad LCD showing the $1,000,000 win. Agent Daniel Pearson of the Commission's Enforcement Division was called in to investigate. Imperial Palace staff members informed Eash that she would be paid only $8,000 for her win, and, as a result, she initiated a patron dispute claim with the casino.

¶4.     Soon after the incident and on the next day, Agent Pearson ran a battery of tests on the machine and reviewed the videotape of the incident. He concluded that the International Game Technology (IGT) programmer who set up the machine mistakenly entered $1,000,000 as the jackpot, rather than $8,000. The machine was also mistakenly programmed as a "Stand Alone Progressive" machine, although nothing on the exterior of the machine indicated that it was a progressive machine.

¶5.     On March 22, 2006, the executive director of the Commission issued a written decision stating that Eash was entitled to $1,000,000. On April 13, 2006, Imperial Palace timely filed a Petition to Reconsider the executive director's decision, requesting a hearing before a hearing examiner appointed by the Commission. At the hearing, Imperial Palace presented testimony from Agent Pearson, Eash, an IGT employee, and two Imperial Palace

---

[3] A patron could win a larger sum of money on the bonus round of the game, but the bonus round is not at issue in this case.

[4] Again, the bonus round is not at issue here.

3

employees. Eash appeared *pro se*, and, after being questioned by Imperial Palace, she presented her son and daughter as witnesses and recalled Agent Pearson. The hearing officer subsequently issued a written decision reversing the executive director's decision. The hearing examiner reasoned that, because the Double Top Dollar machine clearly indicated that the maximum award on that machine was $8,000 and because there was no signage on or around the machine indicating that a patron could win more than $8,000, Eash was entitled to only $8,000 for her winning combination.

¶6. Eash appealed the hearing examiner's decision to the Commission. On March 15, 2007, after reviewing the record, the Commission entered a final decision reinstating the executive director's decision that Eash was entitled to $1,000,000.

¶7. Imperial Palace then appealed to the Circuit Court of Harrison County. Both parties presented arguments to the circuit court at a hearing on the matter. At the conclusion of the hearing, the circuit court ruled in favor of Imperial Palace and found that Eash was entitled to only $8,000. The circuit court subsequently issued a written decision reversing the Commission's decision on the ground that it prejudiced the substantial rights of Imperial Palace in that it "was not made in accordance with the law, arbitrary and maybe arbitrary and capricious, and was made upon unlawful procedure." Eash timely appealed to this Court.

¶8. On appeal, Eash argues that this Court should reverse the circuit court's decision because the substantial rights of Imperial Palace were not prejudiced by the Commission's decision, and because the Commission's decision was supported by the evidence, was not made upon unlawful procedure, was not arbitrary or capricious, and was made in accordance with the law. Imperial Palace claims that the substantial rights of Imperial Palace were

4

prejudiced by the Commission's decision, which was also arbitrary or capricious, was not in accordance with the law, was violative of state and federal law, was unsupported by any evidence, and was made in excess of the Commission's statutory authority. Eash contests Imperial Palace's assertions in rebuttal.

## ANALYSIS

¶9.     "This Court applies the same standard of review that the lower courts are bound to follow when reviewing the decisions of a chancery or circuit court concerning an agency action." ***Town of Enterprise v. Miss. Pub. Serv. Comm'n***, 782 So. 2d 733, 735 (Miss. 2001) (citing ***Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors***, 621 So. 2d 1211, 1216 (Miss.1993)). According to Mississippi Code Section 75-76-171(2), when reviewing the final decision or order of the Commission, the circuit court's review is conducted "without a jury and must not be a trial de novo but is confined to the record on review." Miss. Code Ann. § 75-76-171(2) (Rev. 2000). Section 75-76-171(3) sets out the deferential standard of review:

> (3)     The reviewing court may affirm the decision and order of the commission, or it may remand the case for further proceedings or reverse the decision if the substantial rights of the petitioner have been prejudiced because the decision is:
> (a)     In violation of constitutional provisions;
> (b)     In excess of the statutory authority or jurisdiction of the commission;
> (c)     Made upon unlawful procedure;
> (d)     Unsupported by any evidence; or
> (e)     Arbitrary or capricious or otherwise not in accordance with law.

Miss. Code Ann. § 75-76-171; *see also* ***Miss. Gaming Comm'n v. Freeman***, 747 So. 2d 231, 238 (Miss. 1999). If this Court agrees that the circuit court properly found that the

substantial rights of Imperial Palace had been prejudiced because of any one of the five reasons stated in Section 75-76-171, then this Court will affirm the circuit court's decision. Miss. Code Ann. § 75-76-171(3). If this Court finds otherwise, then this Court must reverse the circuit court's decision. *Id.*

¶10.    Accordingly, we must first determine whether or not the Commission's final decision prejudiced the substantial rights of Imperial Palace. The Commission's final decision requires that Imperial Palace pay Eash $1,000,000 on a machine that was intended to pay a maximum award of $8,000. Eash argues that the substantial rights of Imperial Palace were not prejudiced because Imperial Palace has an indemnity agreement with IGT. The only reference to an indemnification agreement in the record is in the Flat Fee/Stand Alone/Rental and Servicing Agreement between IGT and Imperial Palace. The agreement states, in relevant part:

9.      Lessee [i.e., Imperial Palace] shall maintain adequate liability insurance, naming IGT as an additional insured, and to the extent not covered by insurance shall hold IGT harmless and indemnify IGT from all claims which may arise as a result of the existence, use or operation of the Equipment on the Lessee's premises. . . .

15.     Lessee agrees to indemnify IGT and hold IGT harmless from and against liability or damage from injury or loss arising out of the possession or use of the Equipment on the premises of Lessee, over which IGT has no control. Within the warranty limitations set forth above, IGT shall be responsible for the acts and omissions of its employees and agents.

The warranty portion of the agreement states[5]:

_____

[5] This portion of the agreement is printed in all capital letters, which has been altered in order to make the provision easier to read.

6

4. IGT warrants that during the term of this Agreement the IGT Equipment installed hereunder will be in good working order. Lessee's sole and exclusive remedy is expressly limited to the restoration of the Equipment to good working condition by adjustment, repair or replacement of defective parts, at IGT's election. Except as specifically provided in this Agreement, there are no other warranties, express or implied, including, but not limited to warranties of merchantability or fitness for a particular purpose. No affirmation of fact, including but not limited to statements regarding suitability for use, performance or percentage hold or par value of the Equipment shall be or be deemed to be a warranty of IGT for any purpose. . . .

This agreement covers thirty IGT machines that Imperial Palace leased, including the Double Top Dollar machine in question.

¶11. From the language in the agreement, it is clear that Imperial Palace agreed to indemnify IGT against any claims, and it is equally clear that IGT had not agreed to indemnify Imperial Palace. Any payment required by the Commission's final decision would be paid by Imperial Palace. Therefore, we find Eash's argument that the substantial rights of Imperial Palace were not prejudiced to be without merit. The rights of Imperial Palace have clearly been prejudiced by the Commission's final decision.

¶12. Next, we must determine whether or not the substantial rights of Imperial Palace were prejudiced for one of the five reasons set out in Section 75-76-171(3). Miss. Code Ann. § 75-76-171(3)(Rev. 2000). Subsection (e) of Section 75-76-171(3) states, in part, that the Commission's decision may be reversed if it is "not in accordance with the law." Consistent with Section 75-76-171(3), this Court has recognized that agencies are constrained to follow the law. For example, this Court has stated that "an agency's findings may not be disturbed by appellate courts where . . . the relevant law was properly applied to the facts." *Mickle v. Miss. Employment Sec. Comm'n*, 765 So. 2d 1259, 1261 (Miss. 2000). It follows, therefore,

7

that if the agency did not properly apply the relevant law to the facts, then an appellate court may reverse an agency's decision.

¶13. In this case, the hearing examiner's decision that Eash was entitled to only $8,000 was based largely on contract law. The hearing examiner's decision states that "[w]hen a patron plays a casino slot machine, the patron is entering into a contract with the casino. . . . The express terms of the contract are those that are stated in writing." *Imperial Palace of Miss., LLC v. Eash*, Mississippi Gaming Commission Hearing Examiner Decision No. 06-00076(SD), at 7 (Oct. 16, 2006) (citations omitted). Because the Double Top Dollar machine clearly displayed its terms in writing on the belly glass of the machine, the hearing examiner decided that Eash was bound by those terms, which limited her winnings to $8,000. The circuit court's decision to reverse the Commission's decision was also based largely on the contract law analysis applied by the hearing examiner in her decision.

¶14. Although this Court has not explicitly stated that a patron enters into a contract with a casino when playing a particular machine in that casino, this Court did apply contract principles when reviewing the patron dispute in *IGT v. Kelly*. *Kelly*, 778 So. 2d 773 (Miss. 2001). In *Kelly*, the question was whether Kelly's play on a progressive poker machine – a descending sequential royal heart flush – entitled her to the primary progressive jackpot, which was the advertised award for a sequential royal flush in hearts. *Id.* at 774. IGT, the maker of the machine, argued that the primary progressive jackpot was intended only for an *ascending* sequential royal heart flush and that Kelly was, therefore, only entitled to the secondary progressive jackpot. *Id.* at 775-76. The hearing examiner found that Kelly was

8

entitled to the primary progressive jackpot. *Id.* at 774. The Commission adopted the hearing examiner's decision, and the circuit court affirmed the Commission's decision. *Id.*

¶15. This Court stated that the signage on the poker machine in *Kelly* was ambiguous because it did not specify that a patron could win the primary progressive jackpot only with an ascending sequential royal heart flush. *Id.* at 775-76. Therefore, this Court concluded that Kelly was entitled to the primary progressive jackpot for her descending sequential royal heart flush. *Id.* In reaching this conclusion, this Court relied on a longstanding principle of contract construction. *See, e.g.*, *Miss. State Highway Comm'n v. Dixie Contractors, Inc.*, 375 So. 2d 1202, 1205 (Miss. 1979) ("[A]mbiguities in a written contract [must] be resolved unfavorably to the party who drafted the contract."). In *Kelly*, this Court stated that "if the posted rules in a casino are ambiguous, then the agency will interpret the rule in favor of the patron if the rule can be reasonably read in that fashion." *Id.* at 777. The Commission had also announced this rule in its prior decisions. *Id.*

¶16. Although the patron won the jackpot in *Kelly*, that case cannot be cited in support of awarding Eash $1,000,000 for her winning combination, because the facts of *Kelly* are distinguishable from the facts in this case. While there was ambiguity in the permanent signage on the progressive poker machine in *Kelly*, there was no ambiguity in the permanent signage on the Double Top Dollar machine here. The signage on the machine in this case clearly stated that a winning combination entitled the patron to $8,000. When Eash or any other patron played that Double Top Dollar slot machine, she was playing for a chance to win $8,000 and nothing more. The fact that the electronic displays erroneously stated that Eash won $1,000,000 after she hit the winning combination does not create an ambiguity

9

analogous to the one in *Kelly*. Though it unfortunately caused some confusion, there was no indication from anything on the machine *before* Eash began playing that indicated that a patron could win anything more than $8,000 with three double diamonds lined up on the pay line. In other words, there was no question, *ex ante*, as to what a winning combination was or what the corresponding award would be on the machine in this case. In contrast, in *Kelly*, the permanent signage on the machine was unclear (at all times) as to what constituted a winning combination. *Kelly*, 778 so. 2d 773.

¶17.    In *Allen v. Isle of Capri, Vicksburg*, the hearing examiner stated that a "contract between the patron making the bet and the casino" is formed when the patron places "a wager . . . of the amount allowable in the particular game." *Allen v. Isle of Capri, Vicksburg*, Mississippi Gaming Commission Hearing Examiner Decision No. 97-00285, at 4-5 (June 24, 1997). The formation of a contract between a patron and a casino has also been recognized in the gaming industry. *See* Anthony Cabot & Robert Hannum, *Advantage Play and Commercial Casinos*, 74 Miss. L.J. 681, 682-83 (2005) ("Casino-style gambling involves a contract, which is simply a promise, or set of promises, between the casino and the player. . . . [T]he casino promises to pay the patron a predetermined sum if certain conditions are met. In turn, the patron agrees to place the sum of the wager at risk if those certain conditions are not met.").

¶18.    In this case, the Commission decided that Eash was entitled to $1,000,000 because of the Commission's "broader responsibility in some cases, without ignoring the law or regulations, to ensure that reasonable fairness and the perception of fairness prevails." However, in deciding that Eash was entitled to $1,000,000 for hitting a winning combination

on a machine that advertised a maximum award of $8,000, the Commission did ignore the law. Contract law dictates that when Eash put her money into the Double Top Dollar machine, she and Imperial Palace entered into a contract whereby Imperial Palace would pay her $8,000 if her ten-dollar wager resulted in three double diamond symbols lined up on the single pay line. Since her play resulted in that winning combination, Eash is entitled to $8,000. The Double Top Dollar machine clearly stated that the maximum award on that machine was $8,000, and no information was displayed on the machine that indicated otherwise. Therefore, despite the regrettable programming error that led Eash to believe that she had won $1,000,000, she is entitled only to an $8,000 award.

¶19. It should be noted that this Court's decision in *Pickle v. IGT* also supports the result reached by this Court today. *Pickle v. IGT*, 830 So. 2d 1214 (Miss. 2002). The patron dispute in *Pickle* concerned whether or not Pickle had hit the progressive jackpot on a Wheel of Fortune game when her play resulted in a non-winning combination. *Id.* at 1215. The bells, whistles, and other indicators showed that she had hit the jackpot. *Id.* at 1215. However, the Commission's Gaming Laboratory found that Pickle's combination was not a winning combination, and that the bells, whistles, and other secondary indicators were activated because of a "technical problem." *Id.* at 1218. The hearing examiner made a similar finding, which the Commission adopted. *Id.* at 1219. The circuit court subsequently affirmed the Commission's decision, and this Court affirmed the circuit court. *Id.* at 1219, 1221-22.

¶20. Thus, this Court found in *Pickle* that a patron's award (or lack thereof) is determined by the combination resulting from the patron's play, and not the secondary indicators

11

activated by the play. *Id.* at 1221. In the same way, the proper award here is determined by the rules and instructions on the permanent signage on the Double Top Dollar machine, and not the information displayed electronically on the machine after the winning combination was hit.

¶21. Because this Court finds that the Commission's final decision is not in accordance with the law, the arguments made regarding the other grounds for reversal of the Commission's decision need not be addressed. *See* Miss. Code Ann. § 75-76-171(3) (Rev. 2000).

<u>**CONCLUSION**</u>

¶22. This Court finds that the Commission's final decision in favor of Eash is not in accordance with the law. Therefore, the circuit court's decision to reverse the Commission's final decision is affirmed.

¶23. **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**

12